## WAXAHACHIE OIL COMPANY v. E. B. McLAIN.

### Decided November 16, 1901.

**1.—Master and Servant—Assumed Risks.**

Where a servant knew, or should have known, the peril of the act he was called on to perform, and in the performance of which he was injured, he assumed the risk, and can not recover.

**2.—Same—Manner of Conducting Business—Safe Rules.**

The rule that where the servant knows or ought to know how the business is actually carried on, he assumes the extraordinary hazards arising from the manner in which it is conducted, applies only where recovery is sought on the ground that the injuries were caused by the master's failure to have safe rules for the conduct of the business.

**3.—Same—Duty of Warning—Vice-Principal.**

Absence of the master from the place where the servant is at work will not absolve him from any duty as to care and warning he owes to the servant in respect to such work, and the master's duty in this respect devolves in his absence upon the person in charge of the work under whom the servant acts. See case where the foreman of the meal room in an oilmill is held a vice-principal, and not a fellow-servant of plaintiff while working therein.

**4.—Same—Inexperienced Servant—Scope of Employment.**

Where an inexperienced minor is put to work which is dangerous, it is the duty of the master to give him instruction as to his duties and warning as to

the danger involved, and the duty of such warning exists whether the work is in the scope of the servant's employment or not.

**5.—Same—Minor—Apparent and Known Dangers.**

A charge that even a minor assumes the ordinary risks of his occupation which he actually knows or appreciates, or which are so apparent that he should know and appreciate them, and that, though he was not warned, if he obtained or should have obtained a knowledge of the dangers, he was not entitled to recover, is approved, and held not in conflict with the main charge that plaintiff assumed the risks which were known to him, or which were patent and obvious.

**6.—Same—Fact Case.**

See opinion for evidence held sufficient, in view of plaintiff's inexperience and that he was working under the immediate direction of the foreman and had little opportunity to consider the act, to authorize a verdict in his favor.

Appeal from Ellis. Tried below before Hon. J. E. Dillard.

*Groce & Skinner* and *Baker, Botts, Baker & Lovett,* for appellant.

*Templeton & Harding* and *Finley, Etheridge & Knight,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—In January, 1900, the appellee, E. B. McLain, applied to one Shine, the superintendent of the appellant, the Waxahachie Oil Company, for work. McLain was then 19 years old. He had been raised in the country on a farm, and appears to have had the intelligence and experience common to youths so brought up. He had never worked in an oil mill, and was ignorant of the construction and operation of machinery. Shine at first employed him to work at odd jobs about the mill. After doing this work for several days, McLain applied to Shine for a job in the mealroom, a vacancy having occurred in that department. He was thereupon employed in that capacity, and was told to report to one Williams, the foreman in the mealroom, who would instruct him as to his duties. Shine had authority to employ and discharge hands, and knew of McLain's minority and inexperience, but he did not explain to McLain the character of the work he would be called upon to perform, or warn him of the danger attending its performance. McLain reported to Williams for duty and was assigned to work trucking oil cake to the crusher, which was a machine for grinding cake. The crusher was fed by another employe by placing the cake into the hopper and pressing the same against the cylinders which broke the cake into small pieces. The pieces fell into a receptacle under the crusher, where they were taken up by cups fastened onto a revolving belt which passed from under the machine into an upright frame, the pieces of cake being in this way carried overhead where they were subjected to other processes. The frame arose near the crusher and was open on the side immediately opposite the crusher. Sometimes the elevator would choke up, and cease to perform the service for which it was intended. When this occurred, Williams would call upon any or all of the hands in the room, as he might see proper, to assist in unchoking the elevator. The evidence is conflicting as to whether

McLain had ever assisted in this work prior to the time he was injured. On the 7th day of February, 1900, after McLain had been at work about a week, the elevator became clogged, and Williams called on all the hands in the room, five in number including himself and McLain, to assist in putting it into operation again. Williams directed McLean to get up on the crusher and put one foot on one of the cups fastened to the elevator belt, and press it down. McLain thereupon got up on the hopper of the crusher and, standing with one foot on the rim of the hopper, put the other foot on one of the elevator cups and attempted to press the cup down, when he lost his balance and fell. The crusher had not been stopped, but it was not then being fed. McLain's foot slipped from the rim of the hopper into the hopper and between the cylinders, where it was so badly mangled as to necessitate amputation. There was a shoulder to the crusher, upon which Williams says he intended McLain to stand, but McLain says that he did not know the shoulder was there, as it was covered up with partially crushed cake. McLain was not warned by Williams or anyone else of the hazard of the act he was doing when injured. He knew that the cylinders were in the crusher and that they were in motion when he got up on the hopper. He knew that if his foot slipped into the hopper it would be caught between the cylinders and badly hurt. He fed the crusher five or six hours during the week he worked in the mealroom. The rest of the time he was engaged in trucking cake.

A suit for damages brought by McLain against the company on account of his injuries resulted in a verdict and judgment in his favor for $6000.

1. Under the first assignment of error appellant complains of the action of the trial court in charging the jury that the servant assumes the risks ordinarily incident to the business in which he is engaged, and in refusing a special charge which contained a statement of the rule that the master may conduct his business as he pleases, and if the servant knows or ought to know how the business is actually carried on, he assumes the extraordinary hazards arising from the manner in which the business is conducted. The evidence herein shows that the elevator frequently became choked, and that it was the duty of the hands in the mealroom, working under the direction of the foreman, Williams, to remove the obstruction and put the elevator in operation again. It was not shown whether appellant had adopted any rules for doing the work, but it seems that it was done in such a manner as the foreman saw fit to direct, and that he had authority to act as he pleased in this regard. It does not appear that he had any rule in respect to the particular work appellee was doing when injured. It was not shown that on any other occasion an employe in the mealroom was required to move the elevator belt with his foot. The court did not submit any theory of the case authorizing the jury to consider the failure of appellant to have its business conducted according to safe rules as an element of liability. It was unnecessary, in this state of the case, to give the special

charge. If appellee knew, or should have known, the peril of the act he was called upon to perform, he assumed the risk, and could not recover. This rule was given in charge to the jury, and, under the instruction, it was immaterial whether appellant's business was usually carried on according to safe rules or in a more hazardous manner. The jury was informed by the charge that, in any case, appellee assumed the actual risks incident to his employment of which he knew or ought to have known. Appellant's method of doing business was not involved in the decision of the case. If a recovery had been sought on the ground that appellee's injury was occasioned by the failure of appellant to have safe rules for the conduct of its business and that issue has been submitted to the jury, then the rule invoked would have been pertinent. Such is not the case, however, and the trial court did not err in refusing to give the special charge.

2. The court charged the jury that the servant did not assume any risk arising from the negligence of the master, and, in submitting appellee's theory of the case, further instructed the jury that if appellee was ordered to get on the crusher while it was running, and his position was dangerous and he was not warned of the danger, and if the failure to warn, and the giving of the order, and the failure to stop the machinery was negligence on the part of appellant, then the appellee was (other facts concurring) entitled to recover. Appellant requested a special charge, which was refused, that if in the ordinary use of the elevator it would become clogged and temporarily stopped, and if in such case it was the duty of all the employes in the mealroom to work together to overcome the stoppage, and that such work required no special skill, and Williams had power to direct his coemployes in respect to their common work, but had no authority to employ or discharge them, and if the employes were working together at the time of the accident to overcome a temporary stoppage of the elevator, and if Williams gave a direction to appellee with which he attempted to comply, and if the giving of such direction was negligence on the part of Williams by reason of which appellee was injured, then appellee could not recover. Appellant complains of these things under the first and fifth assignments of error, and insists that Williams was the fellow-servant of appellee and that it is not chargeable with his negligence. Appellee denies that the principle contended for by appellant is applicable to this case, for the reason that the duty of the master rested upon Williams in respect to the matters complained of, and that he was, as to such matters, a vice-principal and not a fellow-servant. The absence of the master from the place where the servant is at work will not absolve the master from any duty owing by him to the servant in respect to such work. Appellant can not escape responsibility for any dereliction of duty for the reason that it was not present, by a formally constituted agent, at the time of the accident, and that it had not specially delegated to Williams the performance of the duty. When appellant employed appellee, knowing

him to be a minor and inexperienced, it owed to him the duty of assign-
ing him to work, and of giving to him such instruction and warning as
to the best and safest way of doing the work as an ordinarily prudent
person would have given a servant of like discretion and capacity.
When it failed to do this, and put appellee under the control of Wil-
liams, and gave Williams authority to employ appellee at such work
as he saw fit, and to direct him in the manner of doing the work, Wil-
liams became the representative of appellant as to all duties which ap-
pellant owed to appellee concerning the work required of him.  As such
representative, the duty of the master rested upon him not to engage the
subordinate servant in any unnecessarily hazardous work, and to give
him proper instruction and warning as to the duties and dangers of
his position.  Negligence on the part of Williams in these respects would
be the negligence of appellant, and the trial court did not err in so in-
structing the jujry.  Newbury v. Mfg. Co., 62 Am. St. Rep. (Iowa),
582; Hayes v. Colchester Mills, 60 Am. St. Rep. (Vt.), 915; Foley v.
Horseshoe Co., 56 Am. St. Rep. (Cal.), 87.

3.  In this connection we will consider the third assignment of error,
which complains of that part of the charge of the court wherein the law
is stated governing the case of an unwarned minor employe who is
directed to do work outside of the employment for which he is engaged,
and more dangerous in character than the work he is employed to do.
The objection to the charge is that the evidence does not raise such
issue.  The charge complained of is simply an abstract statement of
the law, and, in stating the conditions upon which a recovery by appel-
lee was authorized, the court omitted all reference to the principle ob-
jected to.  It would seem, therefore, that the charge in question could
not have influenced the finding of the jury.  Moreover, the charge sim-
ply declares it to be the duty of the master, who puts the inexperienced
minor to work at an employment more dangerous than that for which
he was engaged, to warn the servant of the hazard he is called upon to
encounter.  The duty to warn such servant of the dangers to which he
is exposed exists in all cases when the service is perilous, no matter
whether the work done is in the scope of his employment or not; and
the charge does not, therefore, impose too great a burden upon appel-
lant.  Besides, the reason for the rule stated in the charge was, in some
degree, applicable to this case, even if the rule itself, strictly speaking,
was not.  According to the manner in which the business was conducted,
it was the duty of the hands in the mealroom to assist in unchoking the
elevator.  But appellee can not be said to have assumed such duty until
he was informed that it was embraced within his employment.  For a
time, at least, it must have appeared to him that he was employed only
to truck cake, and when additional and more dangerous duties were
assigned to him, the same were outside the apparent scope of his em-
ployment and as much reason existed for warning him of the extraordi-
nary hazard as if the new duties had been, in fact, outside the work he
was employed to do.

4. Under the first and second assignments of error appellant presents the proposition, based upon refused charges, that it was the duty of appellee to ascertain whether any and what dangers were incident to his employment, and that he should be held to have known such dangers as ordinary care would have disclosed. It may be conceded as a general proposition, that even an unwarned minor servant should use ordinary care to learn the duties of his employment, and the safest way of performing the same. The evidence, in this case, however, does not suggest the theory that appellee failed to use such care. He was not only inexperienced in such work, but he had never before been called on to perform the service he was engaged in at the time of the accident. There is nothing in the record to show that he had, prior to that time, had any occasion to consider whether the act he was doing when injured was dangerous, or what was the best and safest manner of doing it. He was suddenly called on to perform a duty outside the scope of his regular work, and can not be held guilty of want of care in not having theretofore acquainted himself with the hazards attending the performance of such duty.. While there is evidence to the effect that he had once before assisted in unchoking the elevator, he was not then engaged in working with the belt, and appears to have had no reason to investigate and determine whether it was proper and safe for one standing on the crusher to undertake to move the belt with his foot. Why should he make an examination as to the proper means of unchoking the elevator? What was the best method of doing so was a question which appellant had put Williams there to decide. Appellee was vested with no discretion either as to the general manner in which the work should be done or as to his share in it. . Williams had sole authority in the premises, and appellee was not bound to make investigation to the end that he might set up his judgment against that of his superior. Williams, being placed in authority by appellant, was presumably experienced, careful, and competent. Appellee had been directed to obey orders, and was not obliged to anticipate what orders would be given him, and learn in advance whether he could safely comply with them. Before Williams ordered appellee to get on the crusher, he had no reason to expect such a service would be required of him and no occasion to inquire as to the safety or propriety of such an act. These facts would not relieve him from the duty to exercise ordinary care for his own safety in executing the order, and he was also bound to give the order such consideration, as regarded its prudence, as the opportunities of the situation afforded, and the surrounding circumstances demanded. If he was not at fault in these respects the measure of his duty was filled, and he was not chargeable with negligence in not having learned the duties of his position better, or in not having anticipated the services he would be called on to perform and discovered the dangers to which he would be exposed in performing them. The court, at the request of appellant, instructed the jury that even a minor assumes the ordinary dangers and risks of his occupation, which he actually knows and ap-

preciates, or which are so apparent that one of his age and capacity would under like circumstances know and appreciate, and that even though the jury believed that appellee was not warned of the dangers of his employment, yet if he obtained a knowledge of the dangers to which he was subjected from other sources, or from his own observation, or in the exercise of ordinary care, his age and capacity considered, he should have known the danger to which he subjected himself, then he was not entitled to recover. This charge presented the duty of appellee in respect to the care required of him as fully as was necessary under the evidence. Neither is this charge in conflict with the main charge, wherein it is stated that appellee assumed the risks which were known to him, or which were patent and obvious.

5. Under the fourth assignment of error appellant complains that the court, in the main charge, confused the defenses of assumed risk and contributory negligence, and in effect submitted only the latter issue. Conceding that the criticism is just, the omission was cured by the giving of the special charge set out above.

6. Under the sixth assignment of error appellant contends that the verdict was not warranted by the evidence. It was shown beyond controversy that appellant employed appellee, an inexperienced minor, and, with knowledge of his minority and inexperience, required him, without instruction or warning, to engage in a dangerous service, in which he was injured. That appellant was negligent is clear, and the accident must be attributed to such negligence, unless appellee failed to use ordinary care for his own safety in executing the order of Williams, or unless the danger of attempting to obey the order was such that he ought to have refused to perform it. The real issue of fact in the case is whether appellee, knowing as he did the conditions which made the act he was doing dangerous, ought to have had sufficient discretion to realize and appreciate the danger. In view not only of his lack of experience and immaturity of judgment, but also of the fact that he was working under the immediate direction of the foreman and had little or no opportunity for consideration of the act, we think the verdict should be sustained. The judgment is affirmed.

*Affirmed.*

Writ of error refused.