Texas and Pacific Coal Company v. Earnest Manning.

Decided January 22, 1904.

**1.—Master and Servant—Fellow Servants.**

Where two servants of a corporation not affected by the fellow servants act are working together, the mere fact that one of them is the "boss" will not of itself render the corporation liable for injury resulting from his negligence in directing the other servant as to the work.

**2.—Same—Pleading and Charge.**

Where the allegation in plaintiff's petition in an action for negligent personal injury was that the defendant corporation had given K., one of its servants, power or authority to direct and control plaintiff, etc., it was for the court to charge to the effect that defendant would be liable if K. had its "permission and consent" to direct plaintiff in the work. Mere consent or permission to so direct, unaccompanied by a duty on plaintiff's part to obey K.'s orders, would not fix liability on the employer corporation.

**3.—Same—Inference Upon Inference—Vice-Principal—Presumptions.**

Where it was merely an inference from the evidence that defendant had consented for or permitted K. to direct plaintiff in the work, and no express authority therefor was shown, nor that knowledge of K.'s assumed authority was brought home to defendant or to anyone standing in the relation to it of a vice-principal, to infer such authority from the consent so inferred would be presumption upon presumption.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

*John W. Wray,* for appellant.

*Wynne, McCart, Boulin & McCart,* for appellee.

CONNER, Chief Justice.—This is an appeal from a judgment for the sum of $7750 in appellee's favor for injuries received while operating one of appellant's brick machines at Thurber, Texas. The petition upon which the trial proceeded, so far as necessary to set out, and omitting formal parts, is as follows: "That plaintiff is a minor child of the age of, to wit, 11 years. That on the 29th day of August, 1902, plaintiff was in the service of defendants at Thurber, Texas, defendants being then and there engaged in the manufacture of pressed bricks, and that plaintiff's duties in said service of defendants was to brush off bricks with a brush after they had been pressed in a machine used by the defendant for that purpose. That said machine was complicated and difficult to work, and that plaintiff, on account of his extreme youth and inexperience, was unable to understand or know how to operate same and was physically unable to operate same. That the agent and servant of defendants whose duty it was to operate said brick pressing machine and who had charge and control of plaintiff while so in defendants' service, ordered plaintiff to run and operate said brick presssing machine, and that plaintiff, while undertaking to do so under the instructions of and under the directions of defendants' said servant, and while using such care and caution for his own safety as he was capable of using, got his left hand caught in said machine, and that thereby

three of his fingers, to wit, the first, second and fourth fingers of same, were crushed and mutilated and the leaders of same were broken and drawn out of said hand up into his arm above his wrist. That said machine was extremely dangerous for him to use and operate on account of his said youth and inexperience and lack of physical capacity to use and operate same, but that plaintiff himself, on account of his youth and inexperience, was not capable of understanding or appreciating or knowing the dangers to him, incident to the attempted use and operation of said machine by him, but that the defendants and defendants' servant who ordered plaintiff to use said machine, did know that plaintiff was too young and small and weak and inexperienced to use such a dangerous and complicated machine, and that it was gross negligence in the defendants and in said agent and servant of defendants, who directed plaintiff to use and operate said machine, to so have plaintiff to use and operate same. Plaintiff further alleges that the said agent and servant of defendants who directed him to use and operate said machine negligently failed to warn plaintiff of the dangers incident to the use of said machine, and negligently failed to instruct him as to the dangerous nature thereof."

The evidence relied upon as supporting the asserted liability of appellant is thus stated in the brief of appellee:

"Appellee testified that when he was hurt Less Kyle, who was machine man, went to get a drink, and told him to off-bear (brick) while he was gone. That he took orders from Less Kyle. That Kyle had been controlling, or in charge of, the machine about a week at that time. That he was hurt about 9 o'clock in the morning, and that before he was hurt he had been brushing brick. That he quit work brushing brick and went to off-bearing brick because his boss told him to, and that boss was Less Kyle, and that he was doing his (Kyle's) work at the time he was hurt. At the time he was hurt he weighed 60 or 65 pounds. That he never had any experience about machinery or its dangers; never did think whether the brick machine was dangerous or not. Never thought nothing about danger. That Kyle nor no one else ever warned or instructed him about the danger of taking brick out of the machine. 'I worked under Less Kyle a week; before him, Austin Cody. Mr. Kyle had been my boss for about three weeks; the other man about a month. I was working for the company when Kyle took Cody's place; I had worked under Cody ever since I went back to brushing brick, except the time I worked under Kyle.'

"He had been brushing brick about two months before he was hurt. His mother testified that she had hired him to defendant to brush brick. Did not know that he had been put to off-bearing until after he was hurt. Robert McErwin testified that he had worked for the Texas and Pacific Coal Company, in the brick yard at Thurber, twice—seven months the first time,—quitting in January, 1903; trucking part of the time, and off-bearing part of the time. That Kyle run the machine, and off-bore the brick made by it. That he was in charge of the men

there working under him. If a man came there wanting a job and he needed the man, he put him on. There were two off-bearers, two brush boys, and a number of truckers, required to run the machine, and Less Kyle was the machine man at the time appellee was injured. Less Kyle was not used by appellant as a witness, but was put to work at Thurber, wheeling brick, by Marchman, for appellant, on the Monday morning before the trial. Marchman testified for appellant (he being its only witness): That he was general superintendent of the Green-Hunter Brick Company at the time appellee was injured, and that appellant (appellee) was in the service of said company. Here is a sample of his evidence on cross-examination on the question as to who directed appellee about his work, and as to Kyle's power: Q. Who directed this boy about his work while he was working around that machine; didn't Less Kyle do it? A. Mr. Kyle had no authority whatever to direct any one. Q. I didn't ask you what authority; I asked you who directed him. A. I don't know who directed him except myself. Q. Suppose you wasn't there? A. That was my business to be there. Q. But suppose you wasn't there, who then directed this little boy about what he was to do when you wasn't there? A. I have an assistant head engineer. Q. Where does he work? A. He works at the Green & Hunter Brick Co., head engineer of the yard; he works all over the yards. I was in the yard, but not at the machine when the plaintiff was hurt. I don't know where my assistant was at the time. Q. Suppose you and he (that is your assistant) were both away; now, when you and your assistant didn't happen to be there at the machine, who told this boy what to do? A. Who told him what to do? Q. · Yes. A. Might have been a heap of people that told him what to do, as far as I know. Q. Who told him what to do, who was the man that was there to direct this little boy, and the other boys, working there brushing brick, when the machine was running, and you were not there, and your assistant was not there? A. Why, didn't need any director. He was familiar with his job. Q. Who was the man that was there to direct this little boy and these other boys that worked there in brushing these bricks when this machine was running and you was not there nor when your assistant was not there? A. Kyle was machine man. There was a second off-bearer, Kyle was the man that oiled the machine. Q. That meant the head man, didn't it? A. It meant just like I have explained it to you. Q. If you or your assistant was not there, didn't Kyle, the machine man, have charge of the machine? A. He didn't have charge of it any more in my absence than he did when I was present. The machine run as long as the engine would; if it didn't have any dirt it wouldn't make any brick; it would run just the same."

In this state of the allegation and proof the court gave the following charge, to which error is assigned: "If you believe from the evidence that on the occasion in controversy Lester Kyle directed the plaintiff to bear off brick from the machine in controversy, while the same was in operation, and that in so doing plaintiff had his hand caught and

injured in said machine; and if you further believe from the evidence that said Kyle and plaintiff were at the time employes of the defendant, and that Kyle had the permission and consent of the defendant to direct the plaintiff to bear off brick; and if you further believe from the evidence that said work which plaintiff was performing at the time of his injury was dangerous, and that plaintiff was unacquainted with such dangers, and that said Kyle failed to warn him of such dangers, and that he was guilty of negligence in directing plaintiff to bear off said brick without warning him of such dangers, and that such negligence was the proximate cause of plaintiff's injury, then you will return a verdict for plaintiff, unless, under instructions hereinafter given, you find that plaintiff was himself guilty of negligence proximately contributing to his injury."

No complaint is made of negligence on appellant's part in respect to the service of brushing off brick for which it seems appellee was employed, and it is quite evident from the petition and the evidence that the negligence relied upon as fixing liability upon the appellant corporation is the negligence of Kyle in giving the order and failing to warn appellee of the danger incident to the operation of the brick machine. Ordinarily, as against persons or corporations not affected by the fellow servants act, as is the case here, appellee and Kyle must be classed as fellow servants, notwithstanding the fact that Kyle was the "boss," and hence that in such case Kyle's negligence is not imputable to the common employer. See Young v. Hann, 96 Texas, 99, 70 S. W. Rep., 950. Appellee therefore sought by averment and proof to impress Kyle with authority from appellant to direct and control appellee in the matter involved, and thus fix upon appellant the liability charged in accord with the principles announced in the cases of Oil Co. v. McLain, 27 Texas Civ. App., 334, 66 S. W. Rep., 226, and Union P. Ry. Co. v. Fort, 117 U. S., 553, L. Ed., book 21, 739, upon which appellee seems principally to rely. Or, failing in this, to otherwise fix upon Kyle the character of a vice-principal by showing that he was empowered to hire and discharge employes working with and about the brick machine of which Kyle had the superintendency.

The terms used in the petition as the foundation for these contentions, when interpreted in the light of evidence, are in substance that Kyle, whose duty it was to operate the brick machine, "had charge and control" of appellee while in appellant's service. It is only by a most strained construction, if at all, that the quoted terms can be held to import that Kyle had power to employ and to discharge. But if so, no such issue of liability was submitted to the jury, as must have been done if the evidence raised the issue. See Young v. Hann, supra. Indeed, a special charge requiring such a finding was refused. So that at best the only allegation fixing liability upon appellant for Kyle's negligence is that appellant had given Kyle power or authority to direct and control appellee. We have not felt entirely clear that the words quoted import authority of extent justifying appellee's obedience to the order given

to engage in a hazardous undertaking beyond the scope of his employment; but adopting this, the most favorable construction of the petition, as we are required to do in case of general demurrer only (Townes' Texas Pleading, p. 259), we feel at some loss to account for the court's action in submitting, as was done in the charge above quoted, the issue of mere "permission and consent" on appellant's part for Kyle to direct appellee. The issue made by the petition and the evidence, under the most favorable construction, seems rather one of *authority*, and this issue, though requested, was not submitted in any form, unless the charge quoted can be said to do so. Mere consent or permission to so direct that is unconscious or passive, unaccompanied with a duty on appellee's part to obey Kyle's orders, will not fix liability upon appellant. Had express consent or permission been shown, authority might and perhaps should be implied, but there is an entire absence of this in the evidence. That appellant consented for or permitted Kyle to direct appellee in any degree is but an inference from other evidence—as that Kyle assumed such power and no prohibition thereof on appellant's part was shown. Express authority was not shown, nor was it shown that knowledge of Kyle's assumed authority was brought home to appellant or to anyone standing in the relation to it of a vice-principal; and to infer from the evidence appellant's consent and permission, and therefrom to further infer authority as alleged, seems to be basing presumption upon presumption, which must be accepted as objectionable without citation of authority. That the evidence may be sufficient to show the asserted authority in Kyle can not, as is insisted by appellee, relieve the objection to the charge. The evidence certainly does not necessitate such a finding, and its sufficiency therefore was for the jury under appropriate instructions submitting this issue, as was appellant's right to have done.

Argument of appellee's counsel, to which error is assigned, need not be discussed, as it is not likely to be made in the same form upon another trial. In so passing the assignment, however, we do not wish to be understood as approving such argument in its entirety. For the error discussed, however, in the court's charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*