LANTRY-SHARPE CONTRACTING COMPANY v. W. E. McCRACKEN.

No. 2258.   Decided November 27, 1912.

**1.—Fellow Servant Vice-Principal.**

The employee of a master other than a railway who is injured by negligence in the directions given by his foreman as to the manner of performing the work by himself and those engaged with him cannot recover where such foreman, though having the right to direct the performance of the work, has no authority to employ or discharge those engaged in it. (Pp. 412, 413.)

**2.—Same—Cases Discussed.**

The distinction at common law between a fellow servant and the vice-principal for whose negligence the master may be held liable does not depend on grade of employment or right to direct. To constitute a vice-principal he must have also the power to employ and discharge. Douglas v. Tex. Mex. Ry. Co., 63 Texas, 567; Missouri Pac. Ry. Co. v. Williams, 75 Texas, 7; Galveston, H. & S. A. Ry. Co. v. Smith, 76 Texas, 611; Nix v. Texas & P. Ry. Co., 82 Texas, 475; Sweeney, v. Gulf, C. & S. F. Ry. Co., 84 Texas, 436; Young v. Hahn, 96 Texas, 101; followed. Hunt v. Desloge C. L. Co., 104 Mo. App., 377; Bane v. Irwin, 172 Mo., 306; Merchants & P. Oil Co. v. Burns, 72 S. W., 627; Waxahachie Oil Co. v. McLain, 27 Texas Civ. App., 334; Abilene Cot. Oil Co. v. Anderson, 41 Texas Civ. App., 342; distinguished. (Pp. 413-419.)

Error to the Court of Civil Appeals, Third District, in an appeal from Bell County.

McCracken sued the Contracting Co. and had judgment. Defendant appealed and obtained writ of error on affirmance. For previous appeals in this case see 45 Texas Civ. App., 485; 53 Texas Civ. App., 627.

*Harry P. Lawther* and *A. M. Monteith,* for plaintiff in error.— Bruce was a fellow servant. Houston Ice & Brewing Co. v. Pisch, 33 Texas Civ. App., 684; Young v. Hahn, 96 Texas, 99; Cullen v. Norton, 126 N. Y., 1; Maughmer v. Bering, 19 Texas Civ. App., 299; Donovan v. Ferris, 128 Cal., 48; Wiskie v. Montelo Granite Co., 111 Wis., 443; Ft. W. & D. Ry. Co. v. Ramp, 30 Texas Civ. App., 483;

Galveston Elec. Ry. Co. v. Smith, 76 Texas, 611; Paschal v. Chic., M. & St. P. Ry. Co., 62 Wis., 345.

Superiority in rank is not a controlling test, nor the fact that the one has the right to direct and control the work of the other. 4 Thompson, Neg., Sec. 4917, 4918, 4938, and authorities cited.

At common law, all who were engaged in the service of the same master in conducting and carrying on the same general business, and drawing their pay from the same source, were fellow servants, regardless of the fact that they were of different grades, or worked in separate or distinct departments of the service. Sauls v. C. R. I. & T. Ry. Co., 36 Texas Civ. App., 155; Consumers' Cotton Oil Co. v. Jonte, 36 Texas Civ. App., 18; Wells, Fargo & Co. v. Page, 29 Texas Civ. App., 489; I. & G. N. Ry. Co. v. Ryan, 81 Texas, 565; Trinity-Sabine Ry. Co. v. Mitchell, 72 Texas, 609; St. L. Ark. & Tex. Ry. Co. v. Welch, 72 Texas, 298; T. & N. O. Ry. Co. v. Berry, 67 Texas, 238; Mo. Pac. Ry. Co. v. Watts, 63 Texas, 549; T. & P. Ry. Co. v. Harrington, 62 Texas, 597; H. & T. C. Ry. Co. v. Rider, 62 Texas, 257; G. C. & S. F. Ry. Co. v. Dallas, 61 Texas, 196; Robinson v. H. & T. C. Ry. Co., 46 Texas, 540; Investment Co. v. Sline, 17 Texas Civ. App., 692; A. & N. W. Ry. Co. v. Beatty, 24 S. W., 934; T. & P. Ry. Co. v. Compston, 4 Texas Civ. App., 25.

It is settled law in this State, that, in order to raise a co-employee from the grade of a fellow servant to that of vice-principal, he must have the authority to hire and discharge; or, be in the performance of a non-delegable duty of the master. Hugo, Smelzer & Co. v. Paiz, 141 S. W., 521; Houston Ice & Brewing Co. v. Pisch, 33 Texas Civ. App., 684; Bering Mfg. Co. v. Femelat, 35 Texas Civ. App., 36; Direct Navigation Co. v. Anderson, 29 Texas Civ. App., 65; Young v. Hahn, 96 Texas, 99; Maughmer v. Bering, 19 Texas Civ. App., 299; T. & P. Ry. Co. v. Reed, 83 Texas, 439; Austin Rapid Transit Ry. Co. v. Goethe, 88 Texas, 262; Ft. W. & D. C. Ry. Co. v. Peters, 87 Texas, 222; Sweeney v. G. C. & S. F. Ry. Co., 84 Texas, 433; I. & G. N. Ry. Co. v. Heinze, 82 Texas, 623; Nix v. T. & P. Ry. Co., 82 Texas, 473; G. H. & S. A. Ry. Co. v. Smith, 76 Texas, 611; Mo. Pac. v. Williams, 75 Texas, 4; G. C. & S. F. Ry. Co. v. Blohn, 73 Texas, 637; M. K. & T. Ry. Co. v. Whitlock, 16 Texas Civ. App., 176; M. K. & T. Ry. Co. v. Hannig, 41 S. W., 196; S. A. & A. P. Ry. Co. v. Reynolds, 30 S. W., 846; Ft. W. & D. C. Ry. Co. v. Peters, 7 Texas Civ. App., 78.

The rule that it is the duty of the master to provide a reasonably safe place and structure for his servants to work upon does not compel him to keep a building which they are employed in erecting in a safe condition in every moment of their work, so far as its safety depends on the due performance of that work by them or their fellow servants. Or, differently stated, this obligation has no reference to the safety or condition of the thing the servant is employed to repair or complete. Armour v. Hahn, 11 U. S., 313; Armour & Co. v. Dumas, 43 Texas Civ. App., 36; T. & P. Ry. Co. v. Hahn, 93 Texas, 651; Carlson v. Oregon Short Line & U. N. Ry. Co., 28 Pac., 497; Porter v. Silver Creek & Norris Coal Co., 84 Wis., 424; City of Minneapolis v. Lundenfi, 58 Fed., 592, 7 C. C. A., 344; G. C. & S. F. Ry. Co. v. Jackson, 65 Fed., 48, 12 C. C. A., 507; Graham v. Thall &

Sheay, 129 S. W., 532; Dunn v. Great Lakes Dredge & Dock Co., 126
N. W., 833; Finayalson v. Utica Mining & Milling Co., 67 Fed., 507,
14 C. C. A., 492; Allen v. G. H. & S. A. Ry. Co., 7 S. W., 171, 69
S. W., 174; Direct Navigation Co. v. Anderson, 20 Texas Civ. App.,
65; Richardson v. Anglo-American Provision Co., 72 Ill. App., 77;
Labatt, Master and Servant, Vol. I, pp. 611-612, sec. 209, Vol. II, p.
1722, sec. 588; Hollerhan v. Union Iron & Foundry Co. (Mo.), 35
S. W., 260; Reed v. Moore & McFerrin, 82 C. C. A., 434; Morgan
Construction Co. v. Frank, 158 Fed., 964; Kentucky Block Cannel
Coal Co. v. Nance, 165 Fed., 44; McNeill v. Bottsford-Dickinson Co.,
128 N. Y. App. Div., 544; United States Cement Co. v. Koch, 85
N. E., 490; Omaha Packing Co. v. Sanduski, 155 Fed., 897; Chicago
& Marian Coal Co. v. Reese, 126 Ill. App., 567; Utica Hydraulic
Cement Co. v. Whalen, Admx., 117 Ill. App., 23; Hardesty v. Largey
Lumb. Co., 86 Pac., 29; Bloomfield v. Wooster Const. Co. (Mo.), 94
S. W., 304; McElwaine-Richardson Co. v. Wall (Ind.), 76 N. E.,
408; Kellyville Coal Co. v. Bruzas, 79 N. E., 309; Citrone v. O'Rourke
Eng. Const. Co., 188 N. Y., 339; Maloney v. Florence & C. C. R. Co.,
39 Colo., 384; Moon-Anchor Consol. Gold Mines v. Hopkins, 49 C. C.
A., 347; Cleveland, C. C. & St. L. Ry. Co. v. Brown, 20 C. C. A., 147;
Montgomery v. Robinson, 229 Ill., 446; Bedford Quarries Co. v.
Bough, 168 Ind., 671; Perry v. Rogers, 157 N. Y., 251.

*J. B. McMahon,* for defendant in error.—A foreman, giving orders
to those who have been placed by the master under him to work,
with directions from the master to obey the orders of said foreman,
and in reference to work under his control and supervision, neces-
sarily speaks for the master, and in such case is a vice-principal as
to those over whom he is given such authority, although such fore-
man has no authority to hire or discharge servants.     Southwestern
States Portland Cement Co. v. Riser, 137 S. W., 1188; McCracken
v. Lantry-Sharpe Contr. Co., 45 Texas Civ. App., 485; Lantry-Sharpe
Contr. Co. v. McCracken, 53 Texas Civ. App., 627; Mosher Mfg. Co.
v. Boyles, 132 S. W., 492; Bering Mfg. Co. v. Femelat, 35 Texas Civ.
App., 36; Abilene Cotton Oil Co. v. Anderson, 41 Texas Civ. App.,
342; Waxahachie Cotton Oil Co. v. McLain, 27 Texas Civ. App.,
334; M. & P. Oil Co. v. Burns, 72 S. W., 626; M. K. & T. Ry. Co. v.
Deane, 13 Texas Ct. Rep., 990; Mexican National Ry. Co. v. Finch, 27
S. E., 2028; Gunter v. Graniteville Mfg. Co., 18 S. C., 270, 44 Am.
Rep., 573; Hunt v. Desloge Consol. Lead Co., 104 Mo. App., 377;
Bain v. Irwin, 172 Mo., 306.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was brought by W. E. McCracken in the District Court
of Bell County against Lantry-Sharpe Contracting Company, a for-
eign private corporation, to recover damages for personal injuries
received by him, alleged to have resulted from defendant's negli-
gence while plaintiff was its employee assisting in the construction
of a rock crusher plant at its rock quarry in Bell County, in June,
1905.

The case has been three times before the Courts of Civil Appeals,

and opinions disposing of the questions arising on the several trials will be found reported in 45 Texas Civ. App., 485, 101 S. W., 520; 53 Texas Civ. App., 627, 117 S. W., 453, 134 S. W., 363. As the only question here discussed is such as arises out of the action of the trial court in giving in charge to the jury Section 6 of the general charge and in refusing to give special charge No. 4, it will not be necessary to make a detailed and full statement of the case, but only such statement as will be sufficient to explain the ruling of this court upon the law question involved.

Plaintiff was in the employ of defendant as a laborer and was assisting in the erection of a plant to crush rock. The construction of the plant was a simple affair, consisting in its completed condition of a square frame work 30 feet wide and 40 feet high, and was in three sections. There were three heavy, upright timbers, one at each end of the frame and one in the center, being 12x12 inches in dimension. At the time plaintiff was injured he was upon the second section or bent holding the end of the last brace which they were trying to place in said structure on the north side of the central upright timber by means of a derrick and two squads of men upon the ground holding to the tag-lines at each end of said brace for the purpose of guiding it. One of the squads of men at the time of the injury had hold of the rope attached to the end nearest the most northern upright timber, at which plaintiff was sitting, and the other squad had hold of the rope attached to the end of the nearest central upright timber. As stated in plaintiff's petition, "in attempting to place said brace into position in said structure, the block attached to the boom of the derrick, or some part of the derrick rigging, caught upon or became fastened to the top of the central upright timber, and while the same was so fastened, John Bruce ordered the men holding the tag-line to the north and on the side of the central upright timber that plaintiff was on, to pull on their line, and in obedience to said order said squad of men pulled on their line with all their force, but failed to disengage or loose said block or derrick rigging from the top of the central upright timber; that, after waiting some time and discussing with each other as to the better way of disengaging said block or derrick rigging from said central upright timber, said Bruce directed the men on said tag-line to the north of the central upright timber and on the side that plaintiff was on, to pull again on their tag-line, and in obedience to said order said squad of men again pulled upon their tag-line with all their force, and the said upright timber, being only braced on the side that plaintiff was, with a temporary brace, and said brace having been greatly strained and weakened by the first pull, was insufficient to hold the central upright timber in place against the force of the men pulling on the tag-line and hence gave way and the central upright timber fell upon plaintiff's leg and ankle, crushing and mangling same in such manner as to necessitate amputation thereof just above the ankle."

It was charged as negligence on the part of Bruce in giving the order to pull on the tag-line, and that Bruce knew at the time he gave the order, or by the exercise of ordinary prudence should have

known, that the top pull on the tag-line would bring about the resultant accident, and from the position plaintiff was in at the time that the timber would fall upon and injure him.

Recognizing, defendant being a private corporation, that it was essential under the facts of the case, to maintain plaintiff's cause of action, to show that Bruce, who directed the pulling of the tag-line that caused the upright timber to fall upon and injure plaintiff, was a vice-principal of defendant, the following allegation was made and relied upon in plaintiff's pleading, after stating that one, W. C. Ritteger, was defendant's agent with power to employ and discharge hands, and who had employed plaintiff and Bruce and directed plaintiff to obey the orders of Bruce, to-wit: "Plaintiff further represents to the court that the defendant had given to said Bruce the full control, management and superintendence of the erection of the said rock-crusher plant and full authority to direct, manage and control the plaintiff and other workmen assisting him in the erection of said rock-crusher plant, and this plaintiff was directed as aforesaid, to obey the direction and order of the said Bruce while engaged in work upon said structure; and it was the duty of plaintiff and the other employes engaged in work upon said structure to obey his orders and instructions while at work thereon."

An inspection of plaintiff's pleadings shows, and it is not otherwise contended, that reliance for recovery is based solely on the theory that Bruce was a vice-principal of defendant corporation, and therefore the negligence of Bruce was the negligence of defendant. The evidence shows without any controversy that Bruce had no authority to employ and discharge persons in defendant's employment, but it may be conceded that he was invested with the authority attributed to him by plaintiff's allegations as above set out. It may be further conceded in deference to the general verdict of the jury that defendant's injuries resulted from the negligence of Bruce in giving the order to the squad of men to pull the tag-lines which caused the piece of timber to fall. So that the sole question for our decision is as to whether Bruce was or not a vice-principal of defendant. If he was, plaintiff should succeed in his cause; if not, then Bruce was a fellow servant with plaintiff and defendant should prevail in its defense.

The trial court gave in charge to the jury the following, paragraph 6: "You are further charged that an agent or employe who is invested by the master with authority over other employes to superintend or control or command other employes or servants and with authority to direct other employes in the performance of their duties, and not otherwise co-operating with them in the performance of their duties, is a vice-principal of such employer and is not a fellow servant of such other employes, and such employer would be responsible for any damage resulting from the negligence of such vice-principal."

"Now, if you find from the evidence that John Bruce was the foreman and carpenter in charge of the construction of said rock-crusher plant and had authority from the defendant to direct the details of said work and to direct and supervise the workmen engaged

upon same, and was at the time of said alleged injury actually direct-
ing other employes in the performance of their duties, and not merely
co-operating with them in the performance of their duties, then the
said John Bruce would not be in law a fellow servant of such other
employes or of the plaintiff, and the defendant would be liable to
the plaintiff for any injuries sustained by him through the negli-
gence of said John Bruce, if any. You are charged that in this case
W. C. Rettiger is a vice-principal of defendant and defendant would
be liable to plaintiff for any injuries resulting to him from the
negligence of said Rettiger, if any.''

In connection with the foregoing charge, the defendant through
its counsel asked the court to give to the jury the following special
charge No. 4, to-wit:

''In this cause you are instructed that Bruce was a fellow servant
with the plaintiff McCracken, and if you find from the evidence that
the falling over of the upright timber was directly and proximately
caused by any act of Bruce, you will find for the defendant.''

The correctness of the court's action in giving the one and re-
fusing the other of said charges is challenged by defendant in appro-
priate assignments of error.

Plaintiff's cause of action is founded upon the common law. There
is no statute in this State controlling actions against persons or cor-
porations other than railroads and street railways for injuries to the
person not resulting in death. Those provisions of our law defining
who are fellow servants and who are vice-principals relate exclusively
to employes of railroads and street railways.

In determining who are vice-principals and fellow servants in
cases of the status of the one at bar we are relegated to the common
law. A careful investigation of the common law, and especially as
it has been understood and promulgated by the Supreme Court of
this State, reveals the ruling to be that in order to constitute an
employe a vice-principal of the master he must be clothed with the
power to hire and discharge in addition to his authority to direct
and command his co-employes in the work being performed. We
think it may be safely and correctly stated that no case can be found
where our Supreme Court has recognized an employe as a vice-prin-
cipal who has not in the performance of his duties toward his em-
ployer exercised or possessed the power of hiring and discharging
in connection with his authority to control and direct the action of
his co-employes, except as hereinafter qualified. It may be stated
with equal accuracy that no ruling of this court, extending over
the period of more than half a century, can be found sustaining a
judgment for damages for personal injuries caused by the negligence
of an agent of a person or corporation, where such agent was not
authorized to employ and discharge his co-employes, except in in-
stances where such negligence related to those duties of the master
which are regarded as non-assignable and non-delegable, such as
furnishing the servant a reasonably safe place to work, or reasonably
safe instruments with which to perform the service, or the selection
of careful and competent co-employes, etc. Of course, this has no
reference to railroads or street railways, since the statutes have de-

fined who are fellow servants and who are vice-principals, as regards those corporations. It is true a contrary doctrine has been established in many other states, and so have many text writers of substantive law laid down a doctrine at variance with that here adhered to. But it is the unquestioned doctrine of the Supreme Court of this State that before the negligence of a servant is attributable to his principal in the class of cases in question, such servant, in connection with his authority of control, must possess the authority to employ and discharge his co-employes. Without such power to employ and discharge added to such assignable and delegable duties as the principal may make, he cannot be regarded as a vice-principal, and his negligence is that of a fellow servant only.

Without entering into a discussion of the wisdom, justice or policy of such ruling, we would not feel warranted in adopting a different rule, however much inclined we might feel so to to. It has been for so many years the well settled doctrine of this court that we would hesitate to make a change in the absence of a legislative provision authorizing it. This much is said in deference to those courts of civil appeals which have recently held on this point at variance with this court.

As far back as 1885, and before the fellow servants act was passed by the Legislature relating to railroads, it was held in the case of Douglas v. Texas-Mexican Ry. Co., 63 Texas, 567, that in order to constitute the negligence of the agent of the railroad company that of the corporation, such agent must not only have the power of directing his co-employes in the performance of their work, but such agent must be empowered to employ and discharge such servants as operate under him. The court in that case made use of the following language: * * * "it is well settled that where a superintendent, agent or foreman is empowered to select, employ and discharge such servants as operate under him, he is bound to use the same care in protecting such servants from injury as is imposed upon the master, and for any failure in this respect, resulting injuriously to the servant, the master must respond."

In the case of Missouri Pacific Ry. Co. v. Williams, 75 Texas, 7, 12 S. W., 836, 16 Am. St., 867, this question was discussed at length by Mr. Justice Gaines, who, in addition to adhering to the doctrine as formerly established, gave the reason upon which the holding was founded. We quote at some length from that opinion on account of its important bearing upon the question under discussion:

"The evidence was sufficient to warrant the finding by the jury that Holmes had the power to employ and discharge hands, and the verdict was conclusive upon that point. The question therefore arises whether he is to be deemed the representative of the company or a fellow servant as to the employes under his control. Upon this question the authorities are conflicting. The courts of many of the States hold that it is only when an employe is charged with the duty, which by its implied contract a railroad company has undertaken toward its employe, such as furnishing a safe track and machinery and the employment of careful and skilful servants, and the injury results to another employe from his neglect to perform that duty, that he

is to be deemed a vice-principal of the company and not the fellow servant of the injured party. On the other hand, there are numerous cases which hold that the employe who has charge of a special department of a company's business, with power to employ and discharge the servants in his department, is not to be deemed the fellow servant of those under his control. This rule has been recognized and followed by this court. Wall v. Railway Co., 4 Texas Law Rev., 37. A servant who has the authority to employ other servants under his immediate supervision exercises an important function of his master, and has as full control over them as the master would have were he present, acting in person. The subordinate in such a case is in fact as much the servant of the agent who employes and controls him, as he would be of the master were the latter discharging the functions of his agent. It would seem, therefore, that there is as much reason for holding that a servant assumed the risk of the master's negligence, as for holding that he assumes the risk of the negligence of such a superior employe of his master. He may be presumed to exercise an influence over a co-employe who did not employ and has no power to discharge him, calculated to promote care and vigilance on the part of the latter, which he can not or dare not exercise towards one who has the right to terminate his employment. There is reason therefore for adhering to the previous ruling of this court, and for holding that if the plaintiff in this case was under the immediate control of Holmes, and Holmes had the power to employ and discharge the servants under him, Holmes is to be treated as the representative of the company and not the fellow servant of the plaintiff."

The Commission of Appeals in the case of Galveston, H. & S. A. Ry. Co. v. Smith, 76 Texas, 611, 13 S. W., 562, 18 Am. St., 78, undertook to modify the doctrine laid down in the case of Railway v. Williams, *supra*, in such manner as has been done by the Court of Civil Appeals in this case, but that opinion, in so far as it undertook to so change the former rule, was expressly disapproved and the doctrine was announced that to constitute an employe a vice-principal it is indispensable that he should have authority to employ and discharge where he is not charged with non-assignable and nondelegable duties, and the Supreme Court, speaking again through Mr. Justice Gaines, said:

"At the time the Commission returned their report and opinion in this case the opinion in the case of Railway v. Williams, decided at the last Tyler term, had not been published." (75 Texas, 4.) "In that case we held that the servant of a railway company, while working under the immediate supervision and control of another employe of the company, was not the fellow servant of such employe, provided the latter had the power to employ and discharge those who were subject to his orders. We are not now prepared to recede from that ruling. But that case is distinguishable from this. The appellee in the present case at the time of the accident was not employed under the immediate eye of the road master. With the qualification that we do not approve any expressions in the opinion of the Commission which may seemingly conflict with the opinion in

Railway v. Williams, *supra,* we adopt their opinion and reverse and remand the case." (pp. 618-19.)

For the purpose of indicating the rule of this court upon the subject of what constitutes a vice-principal and renders his act that of the master, we quote from the Commission of Appeals in the case of Nix v. Texas & Pac. Ry. Co., 82 Texas, 475, 18 S. W., 571, 27 Am. St., 897, as follows:

"The rule, as we understand it, as now settled by the Supreme Court of this State, is that while mere grades of rank of employes of a railway company engaged in a common employment will not destroy the relation of fellow servants, yet where one is authorized to employ and discharge servants working under him his negligence would be that of the master. Douglas v. Texas Mex. Ry. Co., 63 Texas, 564. The power of such servant or agent to employ and discharge servants engaged with him in the same work will not alone constitute him the master, but where he has such power, as foreman of the work being done, over servants working under him and subject to his direction, his position is that of the master, and the master would be liable for his negligence causing· injury to such servants. Railway v. Williams, 75 Texas, 7. The Supreme Court refused to recede from this doctrine in qualifying their approval of the opinion of the Commission of Appeals in the case of Railway v. Smith, 75 Texas, 618-19.''

Again, this precise question was discussed by the Commission of Appeals in the case of Sweeney v. Gulf C. & S. F. Ry. Co., 84 Texas, 436, 19 S. W., 555, 31 Am. St., 71, and the rule of this court adhered to as an established and well recognized rule as to the existence of which no question could be raised. That case received the approval of the Supreme Court. It was there contended that an employe could not become a vice-principal except when empowered with the authority to perform those duties of the master considered non-assignable and non-delegable, although he had power to control and to employ and discharge those employes under him, but that doctrine was repudiated. Among· other things indicating that the rule in this State as to what constitutes a servant a vice-principal was well understood, the judge rendering the opinion of the court in the Sweeney case, *supra,* said: "The decision in the Williams' case was re-affirmed and attention was pointedly called to the fact that the Supreme Court had but partially adopted the opinion of the Commission in the case of Railway v. Smith, 76 Texas, 618. In this state of the authorities in Texas, we do not think that the question in hand should be treated as an original one."

The case of Young v. Hahn, 96 Texas, 101, 70 S. W., 950, by the Supreme Court, is a positive expression of the rule on the subject under discussion and is a case strongly analogous to the one at bar and may be regarded as authority for holding that the trial court erred in giving in charge to the jury paragraph 6, and in refusing to give special charge 4, as set out herein. In that case Mr. Justice Williams clearly states the rule and its application as follows:

"The regular gangway man, shortly before the occurrence in question, had told McBride to take his place while he went to get

more men. There was no direct evidence that McBride had or ever exercised authority to employ and discharge other employes. Plaintiff was engaged by a man who worked with him in the hold. Other employes were employed by different men, but none by McBride, so far as shown, and beyond this the record is silent as to when and by whom the laborers were employed. The charge of the court throughout made defendant responsible, absolutely, for any negligence of his foreman, and this is assigned as error, as being an assumption of the fact that McBride was a vice-principal of defendant and not merely a fellow servant of plaintiff. We think the assignment is well taken. It is settled by the decisions of this court, in cases not affected by the recent legislation regarding fellow servants, that mere difference in the grade of employment, or the fact that one servant is the foreman or boss of another, does not take them out of the general rule of the common law upon the subject; and that the common master is not responsible for the negligent act of the foreman or boss unless the latter has been intrusted with the power to employ and discharge.''

From a careful examination of the authorities in this State, we have no hesitancy in stating that the crucial test of who are vice-principals in cases other than of railroads and street railways, and instances in which the duties imposed upon the servant with power of overseeing and directing are not those classed as non-assignable or non-delegable, is the authority of such agent to employ and discharge those under his control. With the foregoing qualification, if such agent does not possess the authority to employ and discharge the hands under his control, he cannot under the law of this State be regarded as anything more than a fellow servant with his co-employes, notwithstanding his authority to control and direct those under him. The position of boss or foreman or superintendent, in the absence of such other authority, will not constitute such agent a vice-principal. So that it may not be said without material qualification ''the superior servant doctrine'' obtains in this State. 26 Cyc., 1307 (2).

The learned judge of the Court of Civil Appeals who prepared the opinion in this case, among the principles of law relating to the subject of vice-principals and fellow servants, lays down the following as the law of this State: ''Where one is placed by the master under the control of another, and told to obey his instructions, the orders given by such other in relation to the work in hand, are the orders of the master, without reference to rank or grade which he otherwise holds in such service. In such case the power to employ or discharge is not necessary.''

We are unable to reconcile the doctrine thus announced with that so clearly established as hereinbefore set out, which amounts to saying that an agent cannot be regarded as the vice-principal of the master unless the authority to employ and discharge those under him is coupled with the authority to control and direct such employes. This doctrine, properly analyzed, means that an employe or agent possessed of authority to control, direct and command other employes is not a vice-principal of the master; nor is an employe or agent the vice-principal of the master because he is given the authority to

employ and discharge without the power to control and direct, but to constitute such an agent a vice-principal he must be clothed with the joint authority to control and direct and to employ and discharge. If this be true, and it seems to us indisputable, then the two doctrines are hopelessly irreconcilable.

We are inclined to think Mr. Justice Jenkins has unintentionally omitted an important qualification to the doctrine announced in the above excerpt from the court's opinion. If the statement there made is limited to those duties of the master owing to the servant, which under the law the master has no right to delegate to another, the statement of the law would be in harmony with that of this court upon that subject. As heretofore stated the only exception to the general proposition of what is required in this State to constitute an agent of the master a vice-principal—the power to control coupled with the power to hire and discharge—is that such an agent invested with authority to control and direct those under him becomes a vice-principal in respect alone to those duties delegated to him that are in law regarded as non-delegable.

We have reviewed all of the cases cited in the opinion of the Court of Civil Appeals to sustain the proposition under discussion, but conclude that the decision in each of the cases cited and relied upon is based or sustained upon the principle that the negligence relied upon is either that of a directing agent with power to employ and discharge, or one undertaking to exercise some primary and non-delegable duty of the master. We give an analysis of the cases cited by the Court of Civil Appeals.

Hunt v. Desloge Consl. Lead Co., 104 Mo. App., 377, 79 S. W., 713, was a case where the cause of action was based upon the allegation that defendant failed to furnish the decedent a reasonably safe place to work, a non-delegable duty. This case for that reason does not serve as an authority to support the proposition that an agent invested only with power to control and direct those under him is a vice-principal.

So in the case of Bane v. Irwin, 172 Mo., 306, 72 S. W., 523, the cause of action was based upon the order of a mine boss, who possessed authority to direct the other hands, to proceed to an unsafe place to perform a certain piece of work, and whatever other facts there might have been, the mine boss was possessed with authority to direct the injured party to work at a dangerous and unsafe place. The authoritative exercise of the power on the part of the boss to direct the performance of work at a dangerous and unsafe place to work was the exercise of the duty that primarily belonged to the master to perform and which he could not delegate to another.

The basis of recovery in the case of Merchants and Planters Oil Co. v. Burns, 72 S. W., 627, likewise was that defendant had failed to furnish plaintiff a safe place to work, and having delegated that non-delegable duty to an agent for such purpose made him its vice-principal.

It was alleged and proven in the case of Waxahachie Oil Co. v. McLain, 27 Texas Civ. App., 334, 66 S. W., 226, that the plaintiff was a minor and inexperienced and ignorant of the hazardous work

about the oil mill, and was employed and put to work without any warning as to the danger of the work he was about to perform, and in consequence of defendant's neglect to so warn the plaintiff, he was injured. The court held the defendant liable on account of the negligence of its vice-principal who employed plaintiff, in failing to warn him of the danger of the work assigned him. While che injured party, at the time of his injury, was under the immediate control of a sub-boss the company was held liable for the sole reason that it was regarded the duty of defendant to have warned plaintiff of the dangerous character of the work he was entering upon. There is nothing in that case that sustains the proposition of law as laid down in the opinion of the Court of Civil Appeals in the case at bar. It is the primary duty of the master employing a youthful and inexperienced hand to warn him of the hazards of the employment, if any exist, and a failure to do this, in person or by an agent, is actionable negligence where injury results from such negligence. This presupposes, of course, that the work to be performed is dangerous and such danger unknown to the employe. It has no reference to persons of mature years and discretion, or to dangers discernible and obvious to persons of ordinary common sense.

In the case of Abilene Cot. Oil Co. v. Anderson, 41 Texas Civ. App., 342, 91 S. W., 608, the Supreme Court refused a writ of error, but as has been often indicated such action does not always signify more than an approval of the result reached. It is quite evident that, in refusing the writ in that case, the Supreme Court did not approve some expressions of the learned judge who prepared the opinion, and such approval would be inconsistent with the rule uniformly established by this court on the subject of vice-principals and fellow servants.

The facts of that case show that one Guitar was the assistant general manager of the defendant, Oil Mill, with general authority in and about same, and with authority to direct how the work there should be done. While acting as such assistant general manager of the Oil Mill, Guitar opened the feeding appliances of the cake mill and thereby increased the feed of said mill, by reason of said opening of the feeding appliances and increasing the feed of the cake mill the machinery of the mill was overloaded and the position or place at the engine where the injured party was working was thereby rendered unsafe and dangerous. In consequence of this overloading of the machinery of the mill the engine at which the plaintiff was at work was wrecked and he was injured. It was the primary duty of the Oil Mill not only to furnish, but to maintain, a reasonably safe place for its employes to work, and that duty it could not delegate to another and escape liability for a failure to meet such obligation.

The Court of Civil Appeals finds in its original opinion that no issue was presented in this case as to whether or not the defendant furnished the plaintiff a reasonably safe place to work, and this finding is not reversed in the subsequent opinion. We think this finding correct, notwithstanding the fact that the Court of Civil Appeals finds in its last opinion that the evidence on that point was conflicting, for the reason there is no basis in the pleadings for the

issue. A careful examination of the amended petition upon which plaintiff's cause of action was founded discloses that no such contention is anywhere there made. The action is not based in any respect upon the issue that plaintiff was not furnished with a reasonably safe place to perform his services. The two grounds upon which plaintiff relies for a recovery are that Bruce was placed in control of plaintiff and his co-laborers by the master's vice-principal and that in directing the work of placing a heavy timber brace, through the negligent order of Bruce, an upright piece of heavy timber was pulled upon plaintiff, by which he was injured, and that he was an inexperienced hand and was not warned of the danger incident to the work in hand.

In discussing the latter ground upon which plaintiff bases his action, Judge Jenkins lays down this proposition, which we think is sound, to-wit: "If the place of work was dangerous to appellee by reason of his inexperience, and without reference to such acts of his fellow workman as he ought to have anticipated, it was because that, being unaccustomed to stand or work on high scaffolding or beams, there was danger that he would fall off if he attempted so to do, a danger equally as apparent to an unskilled workman as to the most experienced. The work upon which he was engaged being that of erecting a high machine, he must be held to have anticipated that it might at any time be rendered unsafe by reason of the negligence of his fellow workmen. The real and only issue in this case is, was the act of Bruce, in his capacity as vice-principal, the cause of the injury, or was such injury caused by the negligence of appellee's fellow servant in failing to pull on the rope, as ordered by Bruce?"

Adopting the proposition as above announced as sound, and conceding the issue as there narrowed down to be the only one in the case, we are forced to the conclusion, under the ruling of this court, that Bruce was not the vice-principal of defendant and that his negligence was that of a fellow servant of plaintiff. Paragraph 6 of the court's charge should not have been given to the jury. It presented no issue for their determination. It is not disputed that Bruce had no authority to employ and discharge those working under his direction.

If Bruce's negligence caused the injury complained of it was the negligence of a fellow servant and the law denies the plaintiff the right of recovery. Hence the court should have given special charge No. 4, requested by defendant and hereinbefore set out.

If we concede to be true, which is done, all the plaintiff and his witnesses say in regard to the presence of the vice-principal, Ritteger, plaintiff's cause of action is not strengthened. It is not contended and there is no evidence tending to show that Ritteger was at the time of the accident superintending or directing the work being performed, or that he gave the order Bruce gave or instructed Bruce to give the order, or knew of the order before the accident occurred, and by no forced construction of law can it be said Bruce's act was that of Ritteger. We have examined the case from every point of view, the pleadings, the evidence, the findings of the Court of Civil Appeals and the law, with the purpose of affirming the judgment of the Court of Civil Appeals, but cannot do so without doing violence

to the established law of this State. We will therefore be compelled to reverse the judgments of the Court of Civil Appeals and of the trial court, and here render judgment for the defendant below, which is accordingly done.

*Reversed and rendered.*