W. N. McCORSTIN, Appellant,

v.

E. C. MAYFIELD, Appellee.

No. 15574.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 7, 1955.

Rehearing Denied Feb. 4, 1955.

Brewster, Pannell, Leeton & Dean and Beale Dean, Fort Worth, for appellant.

B. T. Johnson and Frank A. Ogilvie, Fort Worth, for appellee.

MASSEY, Chief Justice.

E. C. Mayfield, a person subject to epileptic seizures, was the employee of W. N. McCorstin. On December 20, 1951, Mayfield was at work tearing boards or sheathing from the wall of a 16 x 24 ft. "tackroom" in a barn. J. L. Wolfe, another employee of McCorstin, was working in and about the premises. There was a smoldering fire burning in an ordinary washtub in the approximate center of the room where Mayfield was working. The presence of this fire was permitted by Wolfe although he had expressly been instructed by Mc-

Corstin "not to permit a fire to be built inside the barn". Indisputably the washtub, containing burning embers had been present for several hours prior to the time Mayfield sustained injuries as a result of falling into the tub. Suit for damages was filed because of such injuries, and a judgment was obtained by Mayfield against McCorstin. It is from this judgment that the appeal was perfected.

Judgment affirmed.

■ This action is grounded on the common law relating to master and servant. In view of the answers of the jury acquitting Mayfield of contributory negligence, etc., fundamentally the question is whether he plead and proved and obtained the requisite jury findings which supported the judgment for damages which was entered by the trial court. Though the defendant McCorstin complained because the court failed to submit his affirmative defense of "assumed risk", he did not preserve any error for his appeal because he only complained of the court's failure to submit an issue thereon in his objections and exceptions to the charge and did not comply with the provisions of Texas Rules of Civil Procedure, rule 276 in presenting and obtaining a ruling of the court upon a specially requested issue embodying the elements of such defense prior to the submission of the court's charge to the jury. 3-A Tex. Jur., p. 242, "Appeal and Error", sec. 185, "Refusal of Requests Rule (276)"; Gowan v. Reimers, Tex.Civ. App. Fort Worth, 1949, 220 S.W.2d 331, writ ref., n. r. e.

As a result we are not troubled in our consideration by any question of the defendant's entitlement to the common-law defenses applicable to an action for injuries by a servant against his master, whether the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., had any effect upon McCorstin's right to assert such defenses, nor whether there was any improper and prejudicial argument which related to any answer of the jury decisive or evidentiary upon the question of whether such Act applied to McCorstin's business ac- tivities pursuant to which Mayfield sustained his injuries.

The issues submitted and answered with which we are concerned were as follows:

"1. Do you find from a preponderance of the evidence that defendant W. N. McCorstin authorized J. L. Wolfe to supervise the construction on the barn in question and to direct and control other employees engaged in such construction in the performance of their duties? Answer: Yes.

"2. Do you find from a preponderance of the evidence that J. L. Wolfe in permitting a fire to be maintained in the tub in question on December 20, 1951 with knowledge that plaintiff Mayfield was subject to epileptic seizures was negligent as the term 'negligence' has been defined? Answer: Yes.

"3. Do you find from a preponderance of the evidence that the negligence if any of J. L. Wolfe, if you have found in answer to Issue 2 that he was negligent, was a proximate cause of the injuries sustained by Mayfield on the occasion in question? Answer: Yes.

"4. Do you find from a preponderance of the evidence that defendant McCorstin had expressly instructed J. L. Wolfe prior to December 20, 1951 not to permit a fire to be built inside the barn in question? Answer: He did so instruct."

■ Of course, in so far as Wolfe's negligence is concerned, it must be negligence which is imputable to McCorstin, as the employer or master of Mayfield, who was injured as result of the negligence. Under common-law negligence it would be imputed to McCorstin if it was an act or omission on the part of Wolfe which would be an act or omission which should be considered as one within the general scope and course of Wolfe's employment. Furthermore, if Wolfe had charge of the business of McCorstin which was being performed by Mayfield, having authority to employ and discharge Mayfield, then he would not be deemed the fellow-servant of

Mayfield, but would be the vice-principal of McCorstin. Lantry-Sharpe Contracting Co. v. McCracken, 1912, 105 Tex. 407, 150 S.W. 1156. The effect of the rule of law making an employee his employer's vice-principal operates to make the master liable to his servant (under the vice-principal) for injuries resultant from the vice-principal's negligence even where he might be acting contrary to express or implied instructions of the master, or exercising authority in excess of that actually conferred, so long as his acts (or omissions) *bear a relation* to the employer's business, *for in so far as the servant is concerned the vice-principal has as much authority over him and the master's premises as the master himself would have were he personally present,* and therefore (in so far as the servant is concerned) the vice-principal is himself the master. For this reason the vice-principal may act directly contrary to express instructions of the master, with knowledge on the part of the servant that he is doing so, for as the master could countermand his own instructions concerning any performance of an employment function so might the vice-principal countermand the master's instructions, and if he does so it is (in so far as the servant is concerned) the master himself countermanding previous instructions. And if the servant be injured in consequence thereof, it is the master who injures him, and if negligence is involved it is the master's negligence, for which the master may be required to respond in damages.

■ Under the facts of this case, McCorstin had given express orders to Wolfe that he should not allow a fire on the premises where the tub of glowing coals actually was when Mayfield was injured. It might have been that McCorstin was cognizant of the danger to Mayfield should he experience an epileptic seizure while working in the room. It does not matter whether such played a part in his instruction or not. Neither does it matter whether Mayfield himself knew of such an instruction having been given in so far as we are concerned with the question of whether McCorstin should be deemed guilty of negligence toward him. What is to be determined is whether Wolfe was indeed a vice-principal for McCorstin, for as already noted Wolfe had been found guilty of negligence by the jury. If Wolfe was only a fellow-servant he might be "outside the scope and course of his employment" in relation to such negligence, for McCorstin had forbidden the fire. But this would not be true and there would be no necessity to make the requisite tests to determine any "scope and course of employment" question if Wolfe was a vice-principal for McCorstin, as in such case we could consider the situation the same as one where McCorstin had countermanded his order and instead ordered the fire to be built for the comfort or convenience of himself or of his workmen, in order that he or they might more conveniently or comfortably perform his service. Certainly the presence of the fire had a relation to the work, for it was present when the weather was cold, and it was used by the employees, including Wolfe, for warmth.

■■ Looking to the evidence, we find that in making out his prima facie case Mayfield introduced McCorstin's deposition, or parts thereof, wherein he testified that Wolfe was in charge of Mayfield and was given complete authority over him, to put him to work, keep him at work, direct him in his work, etc., and furthermore vested Wolfe with authority to hire and fire those working under him, including Mayfield. As a part of his defense McCorstin testified in person upon the trial, and at no point did he dispute the testimony from his deposition nor explain or qualify it. At least from him was there no contradiction of the evidence establishing that Wolfe was his vice-principal. Under these circumstances, we are of the opinion that the fact of Wolfe's status as vice-principal is not in dispute, and we are of the further opinion that whether or not he acted directly contrary to his instructions in permitting the fire in question would have no effect upon McCorstin's liability. Should we be in error in the conclusion that Wolfe's status as a vice-principal was established by law, we should nevertheless consider an omitted issue on the question of whether Wolfe was a vice-

principal as impliedly found as a fact by the trial court in such manner as would support the judgment under authority conferred upon him by T.R.C.P. 279, it being a component element of a ground of recovery otherwise supported by a jury finding. Rodriguez v. Higginbotham-Bailey-Logan Co., 1943, Tex.Civ.App. San Antonio, 172 S.W. 2d 991, error refused; Anderson Furniture Co. v. Roden, Tex.Civ.App. Amarillo, 1952, 255 S.W.2d 345, writ ref., n. r. e.

■ Actually, whether considered as an appliance or instrument of utility in that it afforded comfort to Mayfield so that he was better able to perform his work, or considered in relation to the place for the performance of the work as a safe place to work, it is a true rule in either case that McCorstin's duty toward Mayfield was nondelegable. 29 Tex.Jur., p. 73, "Master and Servant", sec. 37, "Negligence of Fellow-Servants", p. 151, sec. 83, "Negligence as to Instrumentalities, Nondelegable Duties, Liability for Breach", and pp. 237–238, sec. 136, "Physical Conditions at Place of Work". Of course, had Wolfe been a fellow-servant of Mayfield rather than a vice-principal for McCorstin, his negligence in making unsafe or permitting to be made unsafe a place to work or instrumentality connected with the employment which otherwise might have been safe,—might have been outside the scope and course of his employment or contrary to his employment, although bearing a relation thereto. Had Wolfe been a mere fellow-servant the law might prevent Mayfield's recovery absent some further finding to the effect that McCorstin had time and opportunity to have discovered that the condition had become dangerous and time to eliminate the hazard after discovery. 29 Tex.Jur., p. 189, "Master and Servant", sec. 104, "Premises Made Unsafe by Another Servant". But, since Wolfe must be considered as a vice-principal for McCorstin, not only did this leave the dangerous condition as one created or permitted by McCorstin, but it rendered it a dangerous condition of which he had notice but did nothing to correct. In either event the injuries which under the attendant circumstances, in light of Mayfield's susceptibility to epileptic seizures, might reasonably have been foreseen by his master, would be injuries for which McCorstin would be liable as his master. Missouri, K. & T. Ry. Co. of Texas v. Graham, 1919, Tex.Com.App., 209 S.W. 399; Lantry-Sharpe Contracting Co. v. McCracken, supra.

■ McCorstin contends that under the circumstances of the case he could not be liable for Mayfield's injuries as a matter of law, and that therefore he was entitled to an instructed verdict or to a judgment notwithstanding the verdict. We notice the following language in 56 C.J.S., Master and Servant, § 183, p. 880: "In order that the employer may be guilty of negligence in allowing the (unfit) employee to work in a place of peculiar danger to him because of his physical condition, it must be shown not only that the master had knowledge of such physical condition and that the employee was ignorant thereof, but also that the employer did not know of the employee's ignorance." We believe the same language might be considered in relation to some instrumentality utilized in connection with an employee's performance of duties. Similar language is noted in 39 C.J., p. 282, sec. 408. The cases cited by both volumes of Corpus Juris, and others, are to be found under the Annotation, "Physical Unfitness of Employee", in 175 A.L.R., beginning at page 982. But in Texas, particularly in view of the development of our law as to master and servant, incident to the Texas Workmen's Compensation Act, we believe that despite the inequities and hardships necessarily resulting to workmen who have some character of disability making it difficult for them to obtain employment (such as would be true as to epileptics) and likewise resulting to those kind-hearted employers who employ them despite their unfitness, any such condition known to the employers would, under conditions as here exist, entitle such workmen to special protection. The breach of any such obligation on the part of an employer could be made a ground of liability in any individual instance where causal connection between the breach and the injury is shown. The employer's negli-

gence in such a case would not be made any the less negligent nor could it be obviated because of the presence or absence of any act, conduct or knowledge on the part of the unfit or disabled employee. We believe this conclusion is in accord with the reasoning expressed in Monteith v. Manchester Rendering Co., 1925, 82 N.H. 175, 131 A. 440, 25 N.C.C.A. 731; and Hamilton v. Standard Oil Co., 1929, 323 Mo. 531, 19 S.W. 2d 679,—both of which are annotated in 175 A.L.R. at page 994. While applicable to a different condition, a like thought premise appears to have been in the mind of the court in the case of Doty v. Fort Worth & D. C. R. Co., 1936, 127 Tex. 521, 95 S.W.2d 104.

 Assuming that Wolfe was McCorstin's vice-principal, yet if the judgment Mayfield recovered in the case can be permitted to stand, it must be founded upon such findings of the jury, and such additional implied findings on the part of the trial court as he was authorized to make under the provisions of T.R.C.P. 279.

It is noted that though Mayfield plead that the allowance of the fire at the place where he was working was negligence, the submission of Special Issue No. 2 qualifies an ordinary submission of the question of negligence and inquires of the jury whether it was negligence (as related to Mayfield) because permitted *"with knowledge that plaintiff Mayfield was subject to epileptic seizures"*. There was no special issue requested of the jury upon the question of whether Mayfield experienced an epileptic ·attack, in consequence of which he fell into the fire where he sustained his injuries.

If the jury's finding in answer to Special Issue No. 2 can be considered as the controlling or ultimate finding as related to a ground of recovery relied upon by Mayfield, then we can consider that the trial court impliedly made the further findings he was authorized to make under provisions of T.R.C.P. 279, and that Mayfield did experience an epileptic attack in consequence of which he did fall into the tub of burning coals. See Commentaries under the rule in Vernon's Texas Rules of Civil Procedure, by Julius Franki, p. 220; 25 T.L.R. 391; 41–B Tex.Jur., p. 560, "Trial—Civil Cases", sec. 437, "Issues Deemed Found by Court".

We believe that under the circumstances of this case the jury finding as to the fact of Wolfe's negligence as the proximate cause of the injuries was the controlling and ultimate issue and that—since the jury actually affirmatively found that Wolfe was negligent toward Mayfield in a manner related to Mayfield's epileptic seizure, since it appears from the evidence that the defendant McCorstin actually proved upon the cross-examination of Mayfield himself that he had an epileptic attack as result of which he fell into the fire, and since it further appears that McCorstin never objected to the charge based upon the court's assumption that Mayfield experienced a seizure (in consequence of which he fell into the fire) nor requested a special issue upon the question, then we should consider that the trial court impliedly found all these further matters as further authorized complementary findings. The issue which was submitted was actually framed according to the fighting point upon the trial and it is difficult to see why it should not be considered as the controlling issue.

We therefore believe that we should consider such seizure found as a fact in compliance with T.R.C.P. 279 and that such finding, coupled with other findings, constituted all necessary findings requisite to the foundation upon which the judgment should be deemed to rest.

Without setting out the pleadings and the evidence of Mayfield, upon which the special issue findings and implied findings of the court were made, we will state that it is our opinion that the pleadings were properly and timely proffered, and were received by the trial court as such in the sound exercise of his discretion, and such pleadings supported the evidence and the submission of and answers to the issues and implied findings of the court,—and that the evidence supported the submission and answers made to the issues and the

implied findings of the court. It is noted that in connection with his objections to the court's reception of the supplemental pleading and trial amendment, McCorstin never moved for either a continuance or a postponement.

■ We do not see where the argument on the part of Mayfield's counsel, which McCorstin contends was argument to the effect that his knowledge of Mayfield's susceptibility to epileptic seizures could be taken into consideration by the jury in considering the queston of negligence and proximate cause as to Wolfe's permitting the fire's presence where Mayfield was working, could have amounted to prejudice. In the first place, it is not our conclusion from the argument that counsel was telling the jury that it could take McCorstin's knowledge into consideration in answering the issues; and secondly, assuming that counsel should be presumed to have done so, it would not have been such an argument as would occasion reversal, for to our view no juror of ordinary intelligence could have been persuaded by such an argument to agree to a verdict contrary to that to which he would have agreed but for such argument. Goforth v. Alvey, Tex., 1954, 271 S.W.2d 404.

■ In the single issue on damages the trial court told the jury that it could take into consideration "future physical and mental pain and suffering if any * * *", and McCorstin contends that there was no evidence, or in any event insufficient evidence to justify the submission of such instruction in the charge given to the jury, such having been a part of McCorstin's objections and exceptions to the charge of the court. The evidence relative to the future physical pain and suffering is somewhat meager, though there is no question but what the testimony as to the disfigurement of Mayfield's face and loss of use and sensation in his left hand supply adequate evidence of his future mental pain and suffering. It is indeed difficult to determine where physical pain and suffering ceases and mental pain and suffering accompanying it continues, and where there is adequate evidence which would support a finding in favor of a plaintiff as to the future mental pain and suffering, we would not be disposed to reverse a case if there was in addition thereto some evidence as to future physical pain and suffering. Undoubtedly, there was evidence that in future years Mayfield will experience some pain and discomfort in shaving. This would have some value. Reversible error therefore does not appear.

■ McCorstin also contends that the judgment amount, $8,104.95, was excessive. The evidence disclosed that Mayfield was 53 years of age at time of his injuries and 55 years of age at time of the trial, was unmarried, and resided with his mother. His average yearly earnings were not great since in view of his epilepsy he experienced difficulty in obtaining and retaining employment. By the judgment, he received approximately $7,500 over and above the medical and hospital expenses already paid by McCorstin. The evidence disclosed that Mayfield suffered approximately 25% permanent partial disability as applied to his left hand in so far as carpenter work in the future would be concerned. He is left-handed. He has some disfigurement of his face as result of the burns. He has some disfigurement of the left hand, and the little finger was amputated, leaving a "stump". He has had two operations under general anesthesia, involving necessary skin grafting. His injuries were burns. A burn is commonly recognized as one of the most painful of injuries. The amount of the verdict and judgment is not excessive.

Judgment is affirmed.