Texas & Pacific Railway Company v. H. S. Fenwick.

Decided January 9, 1904.

**1.—Railway Companies—Contract Exempting from Liability—Train News Agent.**

Under the constitutional and statutory provisions in this State declaring railroads to be public highways and all railroad companies common carriers, and providing that they shall not in any manner, by special contract or otherwise, limit or restrict their liability as it exists at common law, a railroad company can not escape liability for personal injury resulting from its own negligence to a newsboy serving on its trains, by virtue of a provision in a contract made by it with the news company, and also in the contract made by the news company with the newsboy (a minor) and with his father, exempting the railroad company from liability for injury received while riding on the trains in such service. Const., art. 10, sec. 2; Rev. Stats., arts. 319, 320, 4540.

**2.—Same—Passenger Defined.**

Where a railway company undertakes to transport a person the relation of carrier and passenger exists between them, and this whether the carrier receives an agreed compensation for the transportation of such person, or is compensated therefor by the charge for the car or for transportation of the property of which such person has charge, or receives no compensation whatever for carrying such person. If the railway company undertakes the transportation of the person at all, it does it in the capacity of a common carrier.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*T. J. Freeman* and *Stanley, Spoonts & Thompson,* for appellant.

*Carlock & Gillespie,* for appellees.

SPEER, Associate Justice.—H. S. Fenwick and Charles Fenwick, father and son, prosecuted this as a consolidated suit against the Texas & Pacific Railway Company and the Crescent News and Hotel Company, to recover demages for an injury to the son occasioned by the negligent derailment of one of the railroad company's passenger trains upon which he was riding as a newsboy.

The railroad company defended by pleading the general issue, and specially the release embodied in the following contracts, viz:

"This contract, made this 18th day of December, 1901, between the Texas & Pacific Railway Company, party of the first part, and the Crescent News and Hotel Company, party of the second part, witnesseth: That the party of the first part, in consideration of the stipulations hereinafter contained, hereby grants to the party of the second part for the term of one year the exclusive news privilege of the Texas & Pacific Railway, beginning January 1, 1902; and the party of the first part agrees to transport, free of charge on each of its passenger trains, except limited special trains, one of the news agents of the party of the second part, together with boxes containing necessary stocks

for sale upon the train, said boxes to be suitable in size and shape, not to exceed five hundred pounds in weight, and to be transported in second class coach of said train. Sufficient room for the disposal of said boxes of stock will be allowed by train employes of the party of the first part. Said party of the first part further agrees to transport, free of charge in baggage car, packages of supplies intended exclusively for the use of the party of the second part, and its business under this agreement; and to provide annual passes for two officials of the party of the second part, and such trip passes as it may from time to time have occasion to send over the line of the party of the first part, exclusively on its business contemplated under this agreement. The party of the second part, in consideration of the above granted privileges, hereby agrees to pay the party of the first part the sum of twelve thousand six hundred dollars per annum, to be paid in monthly payments of one thousand and fifty dollars per month, during the term of this agreement; said sum to be paid to the treasurer of the Texas & Pacific Railway Company at Dallas, Texas, by the party of the second part on or before the fifth day of each month, and any failure or refusal on the part of the party of the second part to make any payment as above provided, shall, at the option of the party of the first part, render this agreement void, and said party of the first part may refuse to permit the said party of the second part to further enjoy the privileges above granted. Said party of the second part further agrees to employ as its agents on the trains of the said railway persons of suitable, cleanly and respectable appearance, behavior and habits, and to uniform said agents, and to require that each and every person employed by it under this provision sign a release for all claim for damages for personal injuries received in any manner while upon the trains or premises of said railway, and said party of the second part further agrees to protect and make good to the party of the first part any claims for damages and personal injuries or destruction of property which may be brought against said party of the first part by employes or officers of said party of the second part during the continuance of this agreement. Said party of the second part further agrees to provide for sale upon the passenger trains of said railway and at the station during the time the train stops, newspapers, books, periodicals, stationery, candies, fruits, confections, cigars and tobacco, cake and other refreshments, and any other goods and specialties usually sold by well regulated news companies on passenger trains, but no obscene or objectionable literature of any kind shall be offered for sale or carried on the trains by the agents of said party of the second part, and all goods sold or offered for sale under this agreement shall be good in quality and reasonable in price. The agents and employes of the parties of the second part while upon the trains and premises of the said railway shall be subject to the train rules of the party of the first part, and for improper behavior while upon the trains of the said railway may be summarily dismissed by the train conductor, and shall not be again em-

ployed by the second party except by consent of the party of the first part. This agreement is conditioned upon the prompt and faithful compliance of the party of the second part with all the stipulations contained herein, and the party of the first part may at its option declare it void for any violation of its provisions by the party of the second part, upon reasonable notice by the party of the first part.

"In witness whereof, the parties hereto sign their names the day and year first above written.

"The Texas & Pacific Railway Company,

"By (Signed) L. S. Thorpe, 1st Vice-President & Genl. Manager.

"The Crescent News & Hotel Company,

"By (Signed) John H. Coniff, General Manager.

"Witness: Signed) C. C. Crow, Robert Strong.

"Release. Whereas I, Charles S. Fenwick, age 18 years, have been employed by the Crescent News and Hotel Company as news agent, I hereby agree to release said Crescent News and Hotel Company and any and all railroad companies and other corporations or persons upon whose roads, stations, boats, landings or trains I may prosecute my business as such agent, from any and all claims for damages for any injury that may be done me from any cause while so employed, and I hereby agree not to claim or demand from said Crescent News and Hotel Company or other corporation or person upon whose roads, stations, boats, landings or trains, said Crescent News and Hotel Company may transact its business, any damages or compensation for any injury I may incur whatever, while prosecuting my business as said agent in or upon the said roads, stations, boats, landings or trains.

"Signed and dated at Fort Worth in the State of Texas this 14th day of June, 1902.

(Signed)    "Charles S. Fenwick.

"In the presence of, as witnesses (Signed) R. C. Patty, H. F. Botto.

"Release. Whereas, Charles Fenwick, age 18, has been employed by the Crescent News & Hotel Company as news agent; now therefore I, H. S. Fenwick, his father, do hereby give my consent to said employment, and by these presents hereby ratify and confirm the same, and do hereby release and discharge the said Crescent News and Hotel Company for all claims I have for his services during the time he may be employed, and the said Crescent News and Hotel Company is authorized and empowered to make payment of all sums due the said Charles S. Fenwick for his services to the said Charles S. Fenwick, and his receipt therefor shall be deemed a full satisfaction thereof as against all parties. And in consideration of said employment and one dollar to me in hand paid, the receipt of which is hereby acknowledged, I do hereby release from all claims, demands, actions and causes of action which might arise by reason of any injury to the person or property of the said Charles S. Fenwick the said Crescent News and Hotel Company and any and

all railroad companies or other corporations or persons upon whose roads, stations, boats, landings or trains the said Charles S. Fenwick may prosecute his business.

"Witness our hands, this 13th day of June, 1902, at Decatur, Wise County, Texas.

(Signed)   "H. S. Fenwick.

"Witness:   (Signed)   C. H. Knox."

This contract of release is attacked by appellee as being void for the reason that it contravenes public policy, and is further contended to be not binding on the son because of his minority.

There was a trial and verdict against the railroad company in favor of Charles for $1500, and in favor of H. S. Fenwick for $500, and a verdict in favor of the News and Hotel Company.

The charge of the court is not subject to the objections urged in the first and second assignments of error, and the only question we deem it necessary to discuss is the validity or invalidity of the contract exempting appellant from liability.

It is conceded by appellant that the law books are full of decisions that a common carrier can not contract against its own negligence, and that such is the law; but it is contended, and with apparent reason, that the relation of common carrier and passenger does not exist where the railroad company undertakes to transport a person under the circumstances here shown.  It is argued that "where a railroad company undertakes to do that about which the duties of a common carrier are not concerned, a different question arises, and in such instances the rules of private contracts govern."  To this last proposition we may for the purposes of this opinion assent, but this only postpones the real question in the case, which is, did the railway company in its dealing with appellee occupy toward him the relation of common carrier?  That it did not we are cited to the reasoning of the United States Supreme Court in Baltimore & O. S. Ry. Co. v. Voigt, 176 U. S., 498, 44 L. Ed., 560, and the line of cases there approved.  In that case Voigt was an express messenger in the employ of an express company, and was riding in a railway car set apart for carrying express matter.  He was injured through the negligence of the railway company, but was denied a recovery because of a contract of release substantially the same as the one here pleaded.  To the same effect are most of the cases in the United States where the question has been under consideration, and were we to be governed by mere numerical strength of decisions or even the weight of authority elsewhere, we would undoubtedly uphold the right to make the contract in this case, but we are unwilling to aid in committing this State to such a doctrine.  We are also cited to the decision of our own Supreme Court in Missouri K. & T. Ry. Co. v. Carter, 95 Texas, 461, in which it was held that a railroad company could lawfully contract for immunity against the negligence of its servants in communicating fire to property adjacent to its right

of way.  This may be so; we have no war to make upon that holding, but do not think it conclusive upon the question here presented.  And it may be true, as evidenced by the quotations in the Carter case from the line of decisions above referred to, that our Supreme Court approved the doctrine that a railroad could enter into a contract of carriage as a private carrier in this State, in such way as to exempt it from the results of its own negligence, but we will not attribute such an intention to them in the decision of that case.

The gist of the reasoning in those cases which uphold such contracts, is, that the railroad company, in doing that which under the law it is not its business to do as a common carrier, has the right to act in the capacity of a private carrier, and to impose immunity from liability for negligence as a condition precedent to its engaging in such undertaking.  Baltimore & O. S. Ry. Co. v. Voigt, supra; Railway Co. v. Mahoney, 148 Ind., 196, 40 Law. Rep. Ann., 101; Railway Co. v. Keefer, 146 Ind., 21, 38 Law. Rep. Ann., 93, 44 N. E. Rep., 796; Bates v. Railway Co., 147 Mass., 255, 17 N. E. Rep., 633; Robertson v. Railway Co., 156 Mass., 536, 31 N. E. Rep., 650; Griswold v. Railway Co., 53 Conn., 371, 4 Atl. Rep., 261; Coup v. Railway Co., 56 Mich., 111, 22 N. W. Rep., 215; Railway Co. v. Lockwood, 17 Wall., 357, 21 L. Ed., 627.  But with us can a railway company in any case constitute itself a private carrier of persons or property?  By the terms of the Constitution of this State railroads are declared to be "public highways" and all railroad companies "common carriers."  Const., art. 10, sec. 2.  By statute it is provided that "the duties and liabilities of carriers in this State shall be the same as are prescribed by the common law," and that they "shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid."  Rev. Stats., arts. 319, 320.

It is the business of a common carrier to carry persons and property for hire.  If it undertakes to transport a person, the relation of carrier and passenger exists between them.  It is said in Gulf C. & S. F. Ry. Co. v. Wilson, 79 Texas, 375, that "essentially the relation of carrier and passenger exists in every case in which the carrier receives and agrees to transport another not in its employment, whether this be by contract between them or between the carrier and some other person in whose employment the person to be carried is, for the purpose of transacting on the train the business of his employer, as in case of mail agents, express agents or messengers, and others having duties to their employers to perform which can be performed only by such person, traveling on railway trains or other public conveyances.  Whether the public carrier of passengers receives an agreed compensation for the transportation of such persons, is compensated therefor by the charge for the car or for transportation of the property of which the person

to be carried has charge, or receives no compensation whatever for the carriage of such a person, is a matter of no importance. It is enough that he is lawfully on the car and entitled to transportation to give him the character of passenger and to entitle him to recover for an injury resulting from the negligence of the carrier or its servants, if this occurs without fault on his part." That was the case of a mail agent riding in a mail car which was shown to be more dangerous than the ordinary passenger coaches.

Accordingly it is held that persons riding on free passes, or drover's passes, are passengers; and, too, whether they ride on passenger trains or on freight trains. In all such cases the carrying company owes the passenger the duty of exercising the highest degree of care for his safety. Railway Co. v. McGowan, 65 Texas, 643; Railway Co. v. Flood, 5 Texas Ct. Rep., 925; Railway Co. v. Ivy, 71 Texas, 409; Railway Co. v. Rogers, 21 Texas Civ. App., 605; Harden v. Railway Co., 8 Texas Ct. Rep., 714, 1 Gammel's Law Journal, 1036.

Now, it will not do to say that because the railroad company is under no legal obligation—not its business—as a common carrier, to transport a person at a reduced rate of fare, or without compensation, or to transport him in an unusual way or at an irregular hour, that it therefore may undertake such transportation as a private carrier upon terms of liability of its own making. If it undertakes the transportation at all, it does it in the capacity of a common carrier. It is a matter of no concern that the passenger is carried under a different contract than that upon which passengers are usually carried, or that he remains continuously upon the company's trains, or thereon transacts a business with its passengers. Even if the Voigt case and the other express messenger cases cited above are correctly decided, it does not follow at all that such holding would be proper in this State under the policy of our laws to treat railroad companies as common carriers only. By express statute railroad companies are made, in effect, common carriers of express companies, their agents and merchandise. Rev. Stats., art. 4540. So that the reason which underlies the decision in those cases— i. e., that the railroad companies, when transporting the merchandise and servants of express companies, are not doing so as common carriers— does not exist with us.

The undoubted policy of our law, evidenced not alone by the express terms of the organic and legislative enactments, but by the judicial interpretations thereof, is to regard railroad companies in their relation to persons and property being transported upon their trains, as common carriers of the same. If this conclusion is correct, then it can not be denied that the company in this instance had no power to contract as it did with reference to the transportation of this newsboy. It is all very nice to uphold the principle of freedom of contract, but when that freedom involves the privilege of negligently causing the death of a passenger by a common carrier, all the authorities agree that such contract is reprobated by the law. Railway Co. v. McGowan, supra; Railway Co. v.

Ivy, supra; Railway Co. v. Flood, supra; Railway Co. v. Rogers, supra; Mexican N. R. Co. v. Jackson, 118 Fed. Rep., 549; Starr v. Railway Co. (Minn.), 69 N. W. Rep., 633; Jones v. Railway Co. (Mo.), 28 S. W. Rep., 883, 26 Law. Rep. Ann., 718.

Finding no error in the proceedings of the District Court, its judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.