MEMPHIS COTTON OIL CO. v. GARDNER.
(No. 661.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 14, 1914. Rehearing Denied Dec. 12, 1914.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.
In an action for injuries to an employé by the falling on him of sacks of meal stacked in a room where he was required to work, evidence *held* to sustain a finding of negligent failure to provide a reasonably safe place in which to work.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§§ 288, 289*)—INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK.
Whether an employé, injured by the falling of sacks of meal, assumed the risk or was guilty of contributory negligence *held*, under the evidence, for the jury.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1090, 1092–1132; Dec. Dig. §§ 288, 289.*]

3. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.
A verdict on conflicting evidence will not be disturbed on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

4. MASTER AND SERVANT (§ 103*)—INJURY TO SERVANT—NONDELEGABLE DUTY.
Where sacks of meal were negligently stacked, so as to render the place unsafe for an employé to work, the employer was liable for injury to the employé, though the duty to stack the sacks had been delegated to another, for the duty to provide a reasonably safe place is nondelegable.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

5. MASTER AND SERVANT (§ 125*)—INJURY TO SERVANT—SAFE PLACE TO WORK.
An employer is not liable for a mere temporary unsafe condition of place of work of which he has no notice or of which the exercise of ordinary diligence would not have informed him, but is liable where he could have known of the condition by the exercise of ordinary care.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

6. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—LIABILITY.
Mere temporary dangers created by fellow employés, due to no fault of the plan or construction, are not within the rule imposing on an employer the duty to provide a safe place for employés in which to work.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

7. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—LIABILITY.
Where a working place is made unsafe by the material therein or the construction thereof, and is in that condition when an employé is directed to work thereat, the employer, negligent in permitting it to remain in that condition, is liable for injuries received by the employé.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

8. MASTER AND SERVANT (§ 125*)—INJURY TO SERVANT—SAFE PLACE TO WORK.
Where the employer's vice president and the general foreman frequently passed through a room when the work of stacking sacks of meal was being negligently done, the employer was chargeable with notice of the danger, and was liable for subsequent injury thereby to an

employé, not assisting in the work and knowing nothing of the conditions and not warned.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

9. MASTER AND SERVANT (§ 201*)—INJURY TO SERVANT—NEGLIGENCE—LIABILITY.

Where the negligence of an employer concurred with the negligence of fellow servants in stacking sacks of meal in a room, an employé injured by the falling of the stack while at work could recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

10. MASTER AND SERVANT (§ 201*)—INJURY TO SERVANT—NEGLIGENCE OF EMPLOYER AND FELLOW SERVANT.

Where the negligence of fellow servants in removing sacks of meal stacked in a room, where an employé was injured by the falling of the stack, concurred with the negligence of the employer in the construction of the stack, the negligence of the fellow servants would not defeat a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by W. E. Gardner against the Memphis Cotton Oil Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Presler & Thorne, of Memphis, and R. E. Taylor and Leslie Humphrey, both of Henrietta, for appellant. S. A. Bryant and J. M. Elliott, both of Memphis, for appellee.

HUFF, C. J. W. E. Gardner, appellee, brought an action for damages against the Memphis Cotton Oil Company, for alleged personal injuries received December 24, 1912, and obtained a verdict and judgment against appellant for $250. He alleged that he was employed by appellant's foreman P. M. Holland, and worked under his direction and control; that he was assigned by the foreman to the work of unloading cake from cars when shipped to the mill for grinding into meal, which was his special work; and that he was not familiar with the conditions of the meal room further than the placing of the cake in the same for grinding would render him. On December 24, 1912, he was ordered by Holland to stop the work of unloading and to go to work assisting in removing, retagging, and loading certain sacks of meal from appellant's meal room into a car set for the purpose of being loaded; that some time prior thereto defendant, its foreman and employé, stacked a great number of sacks filled with cotton seed meal in its meal room in close proximity to the sacks which he was commanded to handle, and in doing so carelessly and negligently failed to tie or interlock said sacks in such manner as to insure the stacks standing against jars or shaking incidental to the running of the machinery therein; that the sacks weighed about 100 pounds each and were stacked one upon another to a great height, thereby rendering the same topheavy and liable to fall and dangerous to the life and limb of such employés of the company who were required to work in close proximity thereto; that the row of sacks nearest to where appellee was about to work were stacked with the ends towards his position, giving it the appearance of safety, and that he was ignorant of the true condition of the stack of sacks; that he was not informed of the danger attending the performance of the work to which he had been temporarily assigned; that the particular work he thus began to do was the lifting of sacks from the floor or from low stacks commencing but little above the place of the meal room and setting same at or near the door to retag, and which were taken away and loaded in the car by other hands. While thus engaged, and in a short time after beginning the work, and without knowledge on his part of danger and from causes unknown to him other than the negligent, careless, and insecure stacking above set out, a great number of sacks of meal fell from their high and insecure position and struck and bruised him, mashing him to the floor beneath their weight. It is alleged that the putting of the sacks in the stacks, as above described, in the negligent manner in which they were placed was the direct and proximate cause of appellee's injuries, and that defendant, its foreman and employés, did not stack the said sacks as a person of ordinary prudence would have done under the same circumstances, and as was their duty to do, all of which was known to defendant, its foreman and employés, and could have been known, by the use of ordinary care and diligence, at the time and before the injury, and that they were negligent in failing to warn plaintiff of the danger in which he had been so suddenly placed by order of the foreman. The appellant denied negligence in the particulars alleged, and alleged that the plaintiff voluntarily engaged in the work and was not working at said time under the direction of defendant or any agent authorized or empowered to direct him to engage in such work; that his injuries were caused and due to his own negligence, which contributed to said injuries, his negligence being due to his own carelessness in removing and loading the sacks of meal whereby he incurred danger not necessarily incident to the work in which he was engaged; that the sacks were visible to him and all the dangers incident to said sacks stacked as they were at said time were openly visible to him, and he really knew or could have known of the danger incident to the work by the use of ordinary care; and that he is thereby deprived of any right of recovery.

The first assignment attacks the finding of the jury because the finding that defendant did not provide plaintiff a safe place in

---

which to work is against the undisputed evidence, which is to the effect that there is no danger in the place in which plaintiff was at work, and the only danger to which plaintiff was exposed was caused by his own carelessness and his negligent manner in doing the work; that he was not engaged in tagging and retagging the sacks of meal, but was pulling down sacks in a negligent manner by pulling sacks from beneath instead of removing them from the top, which work he was doing voluntarily without instructions either as to doing or the manner in which he was to do the work from any one, and with full knowledge of the danger to which he was exposing himself by the way he was removing said sacks of meal. Appellant submits this assignment as a proposition, and two other propositions are submitted thereunder: First, that plaintiff based his cause of action upon the negligence of defendant failing to stack the sacks in the meal room as an ordinarily prudent person would have done and upon no other ground. It was incumbent upon the plaintiff to establish the same by a preponderance of the evidence, and, if he failed, the court should not have submitted the issue to the jury. And, second, plaintiff could only recover upon the allegation of negligence alleged, and, if the evidence did not support same, it was error to submit a right of recovery upon any other ground, even if the evidence supported the other ground not alleged, and the court should have instructed a verdict for the defendant.

[1-3] The first issue submitted to the jury in effect is:

"Did defendant company, its foreman and employés, fail to stack the sacks with a view of avoiding injury, as an ordinarily prudent person would have done?"

The jury answered this issue in the affirmative. We are at a loss to understand what issue was here submitted that had no pleading to support it. The jury further found that the appellee was not guilty of contributory negligence, and further answered that the danger in handling the sacks was not open and visible; so that plaintiff could see or know of it, or, from the nature of the work, would reasonably acquire knowledge of such danger; and further that he did not voluntarily assume the risk. They also found that P. M. Holland, the foreman of the mill, instructed him to move the sacks and to work in the place where the sacks were being moved. The testimony of appellee and that introduced by him is to the effect that P. M. Holland, the foreman and manager of the mill, who had the authority to employ and discharge, directed the appellee to assist in tagging and retagging the sacks, and that, in obedience to such instructions, appellee left the work to which he had been assigned, and which he had theretofore been doing (that is, unloading cotton seed cake and carrying it into the mill or crusher to

be ground into meal); that he went into the room where the meal was stacked to assist those engaged in tagging and retagging the sacks. In order to tag and retag the sacks, it was necessary to take the sacks from the stacks and place them so the old tags could be taken off and new ones put on, and, while he was removing the sacks, a stack of the sacks fell on him, covering him up, injuring his ankle, etc. His evidence is that he did not know who had or how the stacks had been constructed previous to his going to work, and that no one warned him of the danger therefrom. He further testified that he thought he would be perfectly safe in getting the sacks, and, if he had not so thought, he would not have gone in after the sacks. The evidence shows that sacks had been taken by others from the two tiers when appellee went into the room to work, and these two tiers extended about one-third the height of the stack at his side, or about six or seven high. It was out of these tiers that appellee commenced to remove the sacks, and he had been there but a short time when the stack fell over and caught him. He further states that the ends of the sacks next to those he was moving were towards him, and he did not think this tier would fall towards him, but that, if they fell, they would roll off to the side from him. From the evidence we do not find that he undermined the tiers of sacks next to the ones he was removing, but only took off the tier which adjoined the ones that fell. Up to the time of the injury he was not aware of the manner in which the stack had been constructed.

It appears from the evidence that the back tier of the stack next to the stack, with the ends towards appellee, the sacks therein for several tiers were piled one upon the other, without being tied or interlocked, and that these tiers pushed out the tier next to appellee and toppled it over on him. At least the jury were authorized to find that the failure to tie or interlock the rear sacks caused them, by reason of their weight, to force over the tier, the ends of which were next to appellee, and, if they had been tied, the sacks would not have so fallen, and that they were negligently stacked. It appears from the evidence that, after this accident, appellant caused stacks in the room to be tied or interlocked by persons then at work in that room. There is evidence to the effect that two weeks previous to the accident sacks so stacked had fallen in that room. There is evidence that in removing the sacks from the stack it was the rule at that mill, and the manager and foreman had so instructed the employés, to take the sacks down by tiers and leave the other tier with the straight wall of sacks. This, however, is denied, and there is evidence that the employés were instructed to commence removing the sacks from the top. As a matter of fact, every issuable fact in this case was

controverted, and the testimony thereon is conflicting. The evidence in this case tends to show that appellee had not been at work in removing sacks for tagging exceeding 30 minutes when the accident occurred, and he says that he had only removed seven or eight sacks and pulled the tags off ready for retagging. The evidence shows that Holland, the superintendent, the day of the accident, or the day after, told the appellee that it was through appellant's carelessness that he was hurt, and that they would pay his doctor's bill, and for his time while confined, and that, if it had been his negligence, they would not do so. The evidence shows they did pay his doctor's bill and for his time lost. We do not feel authorized, therefore, to say there was no fact which authorized the jury to find negligence, or in holding that the uncontroverted facts show that appellee was guilty of contributory negligence, and that he assumed the risk.

As usual in cases of this character, there is a perfect wilderness of contradiction and conflicting testimony, but on that ground alone we do not feel justified in holding the verdict is without support. We do not think that it can be said, as a matter of law, that an inexperienced man, relying upon the assumption that the master knows his duty to the employés, and will perform it, would have known the manner of doing the work was not a reasonably safe one. We do not think within the 30 minutes' work that he acquired such knowledge as to apprise him of the danger he encountered in continuing the work. These questions, we think, were for the jury, and, having passed upon the facts, we do not believe we should disturb their findings. Bonnet v. Railway Co., 89 Tex. 72, 33 S. W. 334. There is evidence at least tending to support the findings of the jury. The same may be said as to contributory negligence. The appellee is not shown to have conducted himself out of the usual and ordinary way of performing the work, and the testimony is that the method of reducing the pile of sacks was resorted to in the instant case that had theretofore been used and directed. True, some of the witnesses say it would have been better and safer to take the sacks from the top, but at least the question was for the jury to say whether an ordinarily prudent man would have acted as did appellee under the circumstances.

The second assignment is to the effect that the court erred in submitting the third special issue, wherein the alleged negligence of defendant's foreman in placing plaintiff in an unsafe place to work was submitted; that the answer of the jury thereto is without evidence to support it; and that the undisputed evidence shows the place to have been safe, and the danger arose from the negligence of plaintiff, and with full knowledge that the work was dangerous, it being open and obvious, and the facts which show his attention was called thereto while doing the work. The proposition thereunder is that a verdict against defendant is erroneous, where the undisputed evidence shows that the place in which the plaintiff was directed to work was not of itself dangerous, but that the danger resulted from the manner in which plaintiff undertook to perform the work without any direction on the part of the principal. This assignment and the proposition thereunder, we think, is substantially disposed of by our findings under the first assignment. The first and second assignments have included therein a proposition that the court should not have submitted to the jury issues Nos. 1 and 3, whether the place was a safe one in which appellee could work, because it asserted that the uncontroverted evidence is that it was safe. The issue as to the place was not directly submitted in issue No. 1, but was submitted in issue No. 3. It is doubtful from appellant's brief whether the issue of a safe place is properly presented for consideration in this court. There are no propositions following the assignments which present the question, and the assignments themselves cannot be treated as a proposition under the rules. This case, however, presents the question of a safe place and the question of fellow servant, which appellant has not presented, as we understand it, by its propositions, but the case is such that it has been forced upon our attention.

[4] If the sacks of meal were negligently constructed, thereby rendering the meal room an unsafe place for the appellee to do the work, then under the rule requiring the master to provide and maintain a reasonably safe place in which its servants are to work would render the appellant liable in this case, even if it had delegated that duty to another. The duty to provide a reasonably safe place is nonassignable and nondelegable by the master. Hugo, etc., v. Paiz, 104 Tex. 563, 141 S. W. 518; Lantry v. McCracken, 105 Tex. 407, 150 S. W. 1156. The authorities cited by appellant upon other issues treat the rule of a safe place as not applying to the manner in which freight or the like is loaded in a place by other servants. It has been held by a Court of Civil Appeals that, where a night crew had stacked cross-ties so that they toppled over and injured a member of the day crew required to work near the place where they were stacked, "it was the duty of the railroad company," says that court, "to provide a safe place for its servants to perform their work, and to that end to exercise ordinary diligence. This duty extended also to the maintenance of the premises in a reasonably safe condition." As soon as "it was shown that the remnant stack of ties was liable to topple over and fall upon the men while at work, and injure them, the dangerous condition in which it was rendered the premises unsafe." Railway Co. v. Echols, 17 Tex. Civ. App. 677, 41 S. W. 488. A writ of error was

denied in that case, and previous thereto the case had been passed upon by the Supreme Court. 87 Tex. 339, 27 S. W. 60, 28 S. W. 517. In the last report the question of safe place is suggested by the Supreme Court.

[5] Appellant would not be liable for a mere temporary unsafe condition of which it had no notice, or by the exercise of ordinary diligence would not be charged with notice, but, if it could have known of the same by ordinary care, the company would be liable. Ray v. Railway Co., 40 Tex. Civ. App. 99, 88 S. W. 466.

[6, 7] Mere temporary dangers created by fellow servants, due to no fault of plan or construction, do not fall under the rule imposing the duty of the master to provide a safe place, but we believe the authorities will support the proposition, when the place has been rendered unsafe by the material therein or the construction thereof, and is in that condition when the servant is directed to work thereat for the master, if the master was negligent in permitting it to remain in that condition, the servant may recover for injuries occasioned by the unsafe place. In such case, negligence appearing, it is a question of fact for the jury whether that negligence was in respect to what was done or undertaken by the fellow workmen or was the negligence of the master. Arkerson v. Dennison, 117 Mass. 407.

[8] The first issue submitted to the jury was as follows:

"Did the company and its foreman and employés fail to stack the sacks of meal, testified about, as a person of ordinary prudence would have done, with a view of avoiding injury to workmen?"

The jury answered, "Yes." And they answered that such failure was the proximate cause of said sacks falling on the plaintiff.

And the third issue was as follows:

"Was defendant's foreman negligent in placing plaintiff to work in an unsafe place, if you find that he did, without warning him of the danger, if you find that he did not? You will answer the above question 'in the negative, unless you find that said foreman knew that said place was unsafe, or by the exercise of ordinary care could have known it, and in this connection you are instructed that it is the duty of an employer to exercise ordinary care to furnish employés with a reasonably safe place to work."

The jury answered this question, "Yes."

An employé of appellant, by the name of Blosser, testified that he assisted and directed in the stacking of the meal in the room the week previous, and that he was the foreman of the meal room. He did not have the right to employ and discharge. The vice president, Bennett, and Holland, the general foreman, frequently passed through the room when the work was being done. The appellee did not assist in the construction of the stacks, and says he knew nothing of its condition and was not warned with reference thereto, which the jury found was true. We

think under such condition, if the master was negligent in failing to furnish a reasonably safe place, that the acts of other servants would, in the construction of the piles of sacks, be the act of the master, and not of a fellow servant, in so far as the appellee in this case is concerned.

[9, 10] If the master was negligent, and such negligence concurred with that of fellow servants, in the construction of the stacks, appellee would have the right of recovery. If the fellow servants, in removing the sacks, were negligent, and such negligence concurred with the negligence of the master in the construction of the stacks resulting in injury to appellee, this would not defeat a recovery by appellee. The jury found appellee himself was not guilty of negligence contributing to his injury, and, under the finding, appellee was entitled to a verdict.

We find no reversible error, and the judgment will be affirmed.