## JACKSON v. HOUSTON E. & W. T. RY. CO.
### (No. 1453.)

Court of Civil Appeals of Texas. Beaumont.
April 1, 1927.

Rehearing Denied April 20, 1927.

1. **Master and servant ⬦⟹270(10)—Contract to indemnify railroad against damages from indemnitor's negligence in constructing platform held irrelevant on issue of railroad's liability to employee.**

In freight conductor's action against railway company for injuries sustained when loading platform on which he was standing was struck by box car, contract of wagon company, not party to suit, to save defendant harmless from all damages caused by former's negligence in constructing and maintaining platform, *held* inadmissible as irrelevant and immaterial.

2. **Master and servant ⬦⟹103(1)—Employer's duties to furnish reasonably safe working place and tools are nondelegable.**

Employer's duties to furnish employee a reasonably safe place to work and reasonably safe tools and equipment with which to work are nondelegable.

3. **Appeal and error ⬦⟹1050(1)—Admitting without qualification, in freight conductor's action for injuries, contract to save railway company from damages by wagon company's negligence in constructing and maintaining loading platform, held reversible error.**

In freight conductor's action against railway company for injuries sustained when loading platform on which he was standing was struck by box car, admission of contract by wagon company, not party to suit, to save defendant harmless from all damages caused by former's negligence in constructing and maintaining platform, *held* reversible error, in absence of charge limiting its application to mutual duties of parties thereto, sufficiently defining defendant's duties to plaintiff and instructing jury that they were nondelegable.

4. **Appeal and error ⬦⟹773(2)—Case will not be dismissed for appellant's delay in filing brief, where appellee had time allowed by rules to file brief.**

Case will not be dismissed on appeal for want of prosecution on ground that appellant failed to file brief within reasonable time, so

that it could be answered by submission day, where appellee has been given all time allowed by rules to file its brief.

### On Rehearing.

5. **Appeal and error ⬦⟹830(1)—Appellee filing no brief will not be granted rehearing to advance counter propositions against appellant's theory.**

In absence of appellee's brief, case must be disposed of on appellant's theory, and appellate court, after reversing judgment, cannot grant rehearing and give appellee permission to advance counter propositions against such theory.

6. **Master and servant ⬦⟹262(1)—Railroad's plea of codefendant's negligence held to allege indemnity contract not available to defeat liability for injuries to employee.**

In action against railway company for injuries to freight conductor, defendant's plea that injuries were direct and proximate result of construction and maintenance of loading rack by codefendant wagon company too close to defendant's track *held* a direct allegation that defendant contracted with codefendant against liability for injuries caused by latter's negligence, and was urging such ex parte contract as defense in effort to relieve itself of common-law duty to furnish plaintiff a reasonably safe place to work, though contract was legal and entitled defendant to indemnity from wagon company for breach thereof.

Appeal from District Court, Angelina County; C. A. Hodges, Judge.

Action by Herbert S. Jackson against the Houston East & West Texas Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Collins & Collins, of Lufkin, for appellant.
Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for appellee.

WALKER, J. Appellant, while in the discharge of his duties to appellee as freight conductor, received the injuries forming the basis of this suit. We quote as follows from his petition:

"Plaintiff alleges that all of his injuries and damage sustained directly and proximately resulted from one or more of the following acts of negligence, operating either singly or concurrently, to wit:

"(a) The defendant, the Houston East & West Texas Railway Company, was negligent in failing to exercise ordinary care and prudence to provide the plaintiff a reasonably safe place and premises on which to perform his services as conductor for the said railway company.

"(b) The defendant, the Houston East & West Texas Railway Company, was negligent in failing to exercise ordinary care and prudence to provide the plaintiff a reasonably safe place and premises on which to perform his services as conductor for the said railway company.

"(c) The defendant, the Houston East & West Texas Railway Company, was guilty of negligence in that it furnished and required the

plaintiff as conductor to handle in his train and carry and place on Miller's Spur, at the side of said platform or skidway, freight car, the sides of which were bulged and swollen, and thereby imperfect, unsafe to handle, and defective, and in such condition that the same was unsafe and dangerous to handle in the manner in which it became necessary for plaintiff and the train crew to handle said car, under the circumstances.

"(d) The defendant, the Houston East & West Texas Railway Company, was guilty of negligence in constructing and maintaining the platform or skidway in such close proximity to the spur track as not to allow the free and safe passage of freight cars over said spur track along by the side of said platform or skidway.

"(e) The defendant, the Houston East & West Texas Railway Company, was guilty of negligence in the construction of the spur track in that, it was constructed so as to curve along at points immediately opposite the edge of the platform or skidway, and the same was unlevel, thereby causing the ends of the cars to be thrown outward and against the edge of the platform as they were propelled over said spur track."

The facts were that, while appellant was standing on a dollyway near an industrial switch constructed for the use and benefit of the Martin Wagon Company, the dollyway was hit by a box car with bulging sides, tearing it down and severely injuring appellant. There was evidence that a loose plank in the dollyway, and possibly some skid poles, negligently left on or near the dollyway by the Martin Wagon Company, contributed to the accident. As originally instituted, the suit was against both appellee and the Martin Wagon Company, but, before announcing ready for trial, appellant dismissed as to the Martin Wagon Company. Appellee's answer was a general denial, plea of contributory negligence, and that the injuries were the result of the negligence of the Martin Wagon Company.

On a trial to a jury, the following issues were submitted and answered as indicated:

"Special issue No. 1: Was the defendant negligent in permitting the loading dock to remain in such close proximity to the spur track? Answer: Yes.

"In the event you have answered special issue No. 1 'Yes,' and in that event only, then you will answer special issue No. 2: Was such negligence, if any, a proximate cause of the accident and resulting injuries to the plaintiff? You will answer this 'Yes' or 'No.' Answer: No.

"Special issue No. 3: Was the plaintiff guilty of contributory negligence in going upon and remaining upon the loading dock for the purpose of giving the signals? You will answer this 'Yes' or 'No.' Answer: Yes.

"In the event you have answered special, issue No. 3, 'Yes' and in that event only, then you will answer special issue No. 4: Was such contributory negligence, if any, a proximate cause of the plaintiff's injuries? You will answer this 'Yes' or 'No.' Answer: Yes.

"Special issue No. 5: Were the plaintiff's in-juries, if any, due to one of the risks ordinarily incident to the business in which he was engaged? Answer: Yes.

"Special issue No. 6: What sum of money, if paid now, would be a fair and adequate compensation for the injuries alleged and proven, if any, to have been received by the plaintiff on the occasion in question, taking into consideration exclusively the following elements of damages, and no others? * * * Answer: "$4,000."

On this verdict, judgment was rendered against appellant.

[1, 2] On the trial, over appellant's objection, appellee offered in evidence a contract between it and the Martin Wagon Company, under which the Martin Wagon Company was to construct and maintain the dollyways and the industrial track, and to save harmless appellee from all damages resulting from its negligence. Without quoting from the evidence or the contract, it is sufficient to say that the issue was raised that appellant's injuries were contributed to by the negligence of the Martin Wagon Company, and that the provisions of the contract offered in evidence made it liable to reimburse appellee for any damages that appellant might recover.

[3] As the Martin Wagon Company was not a party to this suit at the time it was tried, and as no issue was before the jury as to the contractual relations between it and appellee, the admission of this contract in evidence constituted reversible error. This contract undertook to and did delegate to the Martin Wagon Company the general duty fixed by law upon appellee to furnish appellant with a reasonably safe place to work, and with reasonably safe tools and equipment with which to work, binding it to indemnify appellee for any and all damages resulting from its default. The duties imposed upon the Martin Wagon Company by this contract were due primarily by appellee to appellant, and were nondelegable. Therefore this contract was irrelevant and immaterial as to any issue before the jury, and could and did have the effect of confusing the jury and misleading them as to the duties owed by appellee to appellant. Having erroneously admitted the contract, the court did not follow it with his charge defining and limiting its application to the mutual duties owed by appellee and the Martin Wagon Company to each other, nor did the charge even undertake to define appellee's duties to appellant, other than by defining "negligence," the exercise of "ordinary care," and "proximate cause." Having erroneously admitted this contract, by which appellee had undertaken to shift its duties to appellant to the care and keeping of the Martin Wagon Company, the court did not instruct the jury that these duties were nondelegable. The reception of this evidence was clearly erroneous, and without a qualifying charge

was clearly reversible. Corpus Juris, vol. 39, p. 285; Memphis Cotton Oil Co. v. Gardner (Tex. Civ. App.) 171 S. W. 1085; Hugo, etc., v. Paiz, 104 Tex. 563, 141 S. W. 518; Lantry v. McCracken, 105 Tex. 407, 150 S. W. 1156; Pacific Exp. Co. v. Shivers, 41 Tex. Civ. App. 291, 92 S. W. 46; Ruling Case Law, vol. 18, § 206, p. 730; Ruling Case Law, vol. 18, § 209, p. 735; Street on Personal Injuries in Texas, § 122, p. 210; Texas & P. R. Co. v. Fenwick, 34 Tex. Civ. App. 222, 78 S. W. 548; Chicago, R. I. & T. R. Co. v. Rhodes, 35 Tex. Civ. App. 432, 80 S. W. 869. We say "without a qualifying charge," because that was the fact in this case, but we would not be understood as holding that such an error could be cured by a qualifying charge; we only applying our proposition to the facts of this case.

Not as tending to support our construction of this evidence and its erroneous reception, but to illustrate the practical effect it had on the mind of one of the jurors, a very intelligent gentleman, we quote as follows from his evidence adduced on appellant's motion for new trial:

"When I was taken on this jury I took the oath to try the case according to the law as given me in the court's charge and the evidence submitted to me under the rulings of the court; and I did do that as near as possible. As to whether I used any other testimony and evidence than that that I heard from the witness stand, I will state that I was influenced a little bit by that discussion in the jury room. When I was influenced by Mr. Jones, as I have stated, he was discussing the testimony of the case. As to whether the first versions I had of the testimony was not like the version I had after Mr. Jones' explanation, I will state that I understood it different at first. As to whether he explained it from the railroad's standpoint and explained it from the testimony received here, I will state that I do not know whether that would be considered as testimony or not. We answered special issue No. 2 'No.' As to whether that was according to the way we understood it, I will state that that is where we got that contract evidence. I said if it had not been for the Martin Wagon Company contract I would have answered that question 'Yes'; as to whether I can explain to the court what that contract had to do with whether or not it was the proximate cause, I will state that that was the way I understood this. We had answered already that the railroad company was negligent in permitting that loading dock to stay there. Then the next question was, 'Was such negligence, if any, a proximate cause of the accident and resulting injuries to the plaintiff?' We answered that 'No.' As to what part the Martin Wagon Company contract would have to do with answering that question, I will state that here is the way we discussed it: Those two planks in between there on the loading dock the evidence showed would sometimes get loose and probably slip a short ways, and while we discussed—I discussed it that that was a proximate cause because of the loading dock remaining close there, and this came in here and struck this plank, and some of the jurors referred then to this contract, that it did not have anything to do with the case, be-

cause the Martin Wagon Company had a contract, and the instrument says that they must keep this loading dock eight feet six inches from the middle of the track, and that plank slipped forward and caused the car to catch, and had nothing at all to do with the railroad company, and because the contract led me to believe that the Martin Wagon Company would have been liable for this thing here projecting and not the railroad company. As to whether, as soon as the testimony was explained to me, as introduced, and I understood, I changed and answered 'No,' I will state that I did that a little on account of that contract. As to whether that would be my verdict now if I rendered and understood it, I will state that, if that contract had not been entered into, I would not have answered it like I did and would not yet. The contract was in evidence, and, after I understood the testimony and it was explained to me, I answered it 'No.' As to whether I answered it from the way I understood the evidence to be, I will say, with the introduction of the contract, 'Yes.'"

[4] This case has been pending on our docket for more than a year. At a previous day of this term we ordered it dismissed for want of prosecution on motion filed by appellee. However, the case was reinstated on motion of appellant. Twenty days before this case was set for submission, appellant filed his brief herein, giving appellee a copy of the same. A few days before submission, appellee renewed its motion to dismiss on the ground that appellant had not filed his brief within a reasonable time, so that the same could be answered by submission day. This motion is overruled. Under the statement made by appellee, it had the full twenty days allowed by the rules in which to file its brief. It would be an extraordinary holding that the case must be dismissed for want of prosecution when it affirmatively appears that appellee has been given all the time allowed it by the rules in which to brief its case.

Appellee, by its motion, showed reasonable grounds for a postponement, but not for a dismissal of the case. However, it did not ask that the submission be postponed, and made appearance neither by its attorney nor by brief.

For the error discussed, the judgment of the trial court is reversed, and the cause remanded for a new trial.

### On Rehearing.

In a very able motion for rehearing, appellee advances the following propositions:

(a) The contract was admissible for certain specific purposes, and an objection that does not point out the particular "portions or paragraphs of the contract which were inadmissible" does not show error.

(b) Appellant offered evidence to the same effect as the written contract which was received without objection.

(c) It was a disputed material issue as to

who owned the 300 feet of track provided for in the written contract.

(d) The court did not give due weight to all the evidence in the record.

(e) Appellant's injury was caused by an independent act of negligence on the part of the Martin Wagon Company, thereby excluding the negligent construction of the dollyway, and the issue of whether the accident was caused by the box car with bulged sides as proximate causes of appellant's injury.

(f) The finding on the issue of assumed risk was fully supported as an independent defense, unaffected by the reception of the contract as evidence.

(g) Appellant's assignments of error and propositions are insufficient to show reversible error, in that construed in the light of the record they do not affirmatively show error in the reception of the written contract.

[5] As appears from our original opinion, appellee did not brief this case. The propositions now advanced could be reviewed only by granting a rehearing and giving appellee permission to advance these propositions as counter propositions against appellant's theory of the case. Under the rules we have no authority to grant appellee that relief. In the absence of its brief, the rules require that we dispose of the case on the theory advanced by appellant.

Appellee criticizes as being contrary to the undisputed evidence and without any support in the record our conclusion:

"The facts were that, while appellant was standing on a dollyway near an industrial switch constructed for the use and benefit of the Martin Wagon Company, the dollyway was hit by a box car with bulging sides, tearing it down and severely injuring appellant."

This issue was pleaded by appellant, and has support in the following evidence:

"I never noticed that bulged car. I don't know how close that car passed to the other three loading docks; I say I was not looking at it; I had my back to it. As to whether I do know that it passed the other three loading racks, I will state that some portion of that car struck some portion of that platform; I can't tell you what it was. I don't know whether that car struck the west end or the north end. * * * If that skidway had been back 12 or 15 or 18 inches further west that bulged car would not have hit it. If it had been built further, and had not been so close, as to whether that bulged car would have passed it, I will state that it would if it had been far enough away from it; if it had been built 18 or 20 inches back further there would have been plenty of room for the bulged car to have passed. As to whether, if

those planks had not been sticking out there too far and if they had been further back, the bulged car would not have struck them, I will state that I don't know but that they were back there."

W. J. McGee testified:

"I saw what caused him to fall. I saw that skidway moved that caused him to fall. The car they were setting in there struck the skidway or edge of the plank one. This car was bulged on the side. That car must have been bulged 12 or 15 inches out of line. It was a coal car; that is, the car that is built with sides like a box."

[6] Appellee says that the contract was not an effort on its part to delegate to the Martin Wagon Company the duty to furnish appellant a reasonably safe place to work. The contract provided that the Martin Wagon Company should build and maintain a spur track, dollyway, etc., and made it liable to appellee for a breach of those conditions. It was contemplated by the contract that appellee's servants were to use its spur track. Appellee pleaded:

"The defendant railway company further alleges that plaintiff's injuries, if any, were the direct and proximate result of the construction of the loading rack used by its codefendant in too close proximity to defendant's track, * * * but that said negligence, if any, did not constitute or become the proximate cause of plaintiff's injuries chargeable to or attributable to the defendant railway company, the said loading rack having been constructed and maintained by the defendant Martin Wagon Company."

As we construe appellee's plea, it constitutes a direct allegation that it had contracted against liability and was urging that contract as a defense against appellant's cause of action. It is no answer to this contention to say, as appellee does in its motion for rehearing, that, as between it and the Martin Wagon Company the contract was legal, and that it had a right, in such contract, to insist upon indemnity from the Martin Wagon Company for a breach by it of the contractual obligations. The contract between the parties thereto was perfectly legal, but, as between appellant and appellee, was ex parte and constituted an effort on the part of appellee, as it directly pleaded, to relieve itself by contract of its common-law duty to furnish its servants a reasonably safe place to work.

The motion for rehearing and the additional motion to strike out appellant's assignments of error and propositions are overruled.